## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| LILJANA SINOJMERI, | : | |
| | : | |
| Debtor, | : | Chapter 7 |
| | : | Case No. 24-10899-AMC |
| | : | |
| CHIA-HUI CHANG and PAI-CHI TSAI, | : | |
| | : | Adversary No. _____ |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| LILJANA SINOJMERI, AMERICAN | : | |
| STEEL CONTRACTORS LLC, ILIR | : | |
| SEVI, JOHN DOE 1-10, and ABC | : | |
| COMPANY 1-10, | : | |
| | : | |
| Defendants. | : | |

### COMPLAINT TO DETERMINE DISCHARGEABILITY, AVOID TRANSFERS OF PROPERTY, AND RECOVER ASSETS FOR THE BENEFIT OF THE BANKRUPTCY ESTATE

Plaintiffs CHIA-HUI CHANG and PAI-CHI TSAI ("Plaintiffs"), on behalf of themselves, individually, and derivatively on behalf of the bankruptcy estate of Debtor LILJANA SINOJMERI, by and through their undersigned counsel, as and for their Complaint against Defendants LILJANA SINOJMERI, AMERICAN STEEL CONTRACTORS LLC, ILIR SEVI, JOHN DOE 1-10, and ABC COMPANY 1-10, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

### NATURE OF THE ACTION

1.      Debtor and her cohorts fraudulently plundered and transferred intangible and tangible assets previously held by a company wholly owned by Debtor.

2.      When Debtor filed her bankruptcy, she then reported to this Court that her ownership interest of that company was worthless, and that her estate had no non-exempt assets available to satisfy her substantial debt to Plaintiffs.

3.      Plaintiffs now seek (a) disgorgement of the plundered intangible and tangible assets from the parties who currently possess them; (b) that the lost value be restored to the bankruptcy estate; (c) a determination that the debt to Plaintiffs is not dischargeable in bankruptcy; and (d) related relief.

## JURISDICTION AND VENUE

4.      This adversary proceeding relates to and arises under the Chapter 7 case of In re Liljana Sinojmeri, Case No. 24-10899-AMC (the "Sinojmeri Bankruptcy Case"), currently pending before this Court. The Sinojmeri Bankruptcy Case was commenced on or about March 18, 2024 (the "Petition Date").

5.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and pursuant to the July 25, 1984 Eastern District of Pennsylvania Bankruptcy Administrative Order (as amended on Nov. 8, 1990), and 11 U.S.C. § 523.

6.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1408 and 1409(a).

7.      This adversary proceeding is a core or related proceeding pursuant to 28 U.S.C. § 157.

8.      This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

9.      The Chapter 7 Trustee filed a Report of No Distribution, Certification of Services Rendered Under 11 U.S.C. § 330(e), and a Request to be Discharged on May 1, 2024. (Doc. No.

20), and Plaintiffs therefore have derivative standing to pursue the causes of action set forth below.[1]

## THE PARTIES

10.    Plaintiff Chia-Hui Chang ("Chang") is an individual resident of Pennsylvania residing at 101 Pugh Road, Wayne, Pennsylvania 19087.

11.    Plaintiff Pai-Chi Tsai ("Tsai") is an individual resident of Pennsylvania residing at 101 Pugh Road, Wayne, Pennsylvania 19087.

12.    Chang and Tsai are wife and husband, respectively.[2]

13.    Defendant American Steel Contractors LLC ("ASC") is a limited liability company organized and existing under the laws of the State of Pennsylvania since July 5, 2017, with a registered office located at 72 Meadowbrook Road, Wayne, Pennsylvania 19087, and a principal place of business located at 332 Sugartown Road, Apt. B27, Devon, Pennsylvania 19333.

14.    Defendant Ilir Sevi ("Sevi") is an individual resident of the State of Pennsylvania, whose last known address is 72 Meadowbrook Road, Wayne, Pennsylvania 19087.

15.    Upon information and belief, Defendant Liljana Sinojmeri ("Sinojmeri" or "Debtor") is an individual resident of the State of Pennsylvania, and resides at 332 Sugartown Road, Apt. B27, Devon, Pennsylvania 19333.

---

[1] See Artesanias Hacienda Real S.A. De C.V. v. North Mill Capital, LLC (In re Wilton Armetale, Inc.), 968 F.3d 273 (3d Cir. 2020) ("In this case, we hold that the creditor plaintiff has both constitutional standing and the statutory authority to sue two defendants who allegedly plundered a now-bankrupt company that owed the creditor money. When the trustee formally abandoned the estate's claims against those defendants, he returned the power to pursue those claims to the creditor.").

[2] Chang and Tsai are each listed on Paragraph 4 of Debtor's Schedule E/F: Creditors Who Have Unsecured Claims dated April 26, 2024, as having disputed claims in the amount of Six Hundred Thousand and 00/100 Dollars ($600,000.00). (Doc. No. 18.)

16.     At all relevant times hereto, Sinojmeri has held legal title to a one-hundred-percent (100%) ownership interest in ASC.

17.     At all relevant times since July 5, 2017 and until the unlawful transfer of assets of ASC described herein, Sevi managed ASC projects for customers and performed services of ASC for customers.

18.     Upon information and belief, at all relevant times hereto, Sinojmeri has been the mother-in-law of Sevi.

19.     Defendants John Doe 1 – 10 and ABC Company 1 – 10, whose true identities and locations are presently unknown to Plaintiffs, together with Sevi and Debtor, conspired to, aided, abetted, participated in, and knowingly caused the unlawful transfer of assets of ASC and breaches of fiduciary duties, as described more fully herein, and are liable, jointly and/or individually, for the causes of action set forth herein.

## FACTUAL BACKGROUND

### I.  General Background

20.     In or around 2020, Plaintiffs retained the services of ASC to provide home improvement construction services for Plaintiffs' family home, located at 101 Pugh Road, Wayne, Pennsylvania 19087 (the "Premises").

21.     On or about October 19, 2020, Plaintiffs executed a contract with ASC relating to the construction services referenced above (the "Construction Agreement").   A true and correct copy of the Construction Agreement is attached hereto and incorporated herein in as Exhibit A to Exhibit 1 hereto.

22.     Plaintiffs paid hundreds of thousands of dollars to Defendants ASC and Sevi, and complied with the Construction Agreement.

23.     Defendants ASC and Sevi failed to perform a substantial amount of the work required by the Construction Agreement, caused innumerable construction defects and incidental problems such as water leakage, illegally used Plaintiff Chang's credit card without authorization, illegally misappropriated Plaintiffs' construction materials for other projects, created extended delays and lied about the reasons for them, performed work without a permit, and failed to comply with various statutory consumer-protection laws, which exist specifically to protect homeowners, like Plaintiffs, from unscrupulous contractors, like Defendants.

24.     At the time the Construction Agreement was executed, Plaintiffs believed that ASC was wholly owned and operated by Sevi.

25.     At all relevant times prior to October 2022, the ASC website explicitly identified Sevi as the founder and owner of ASC, stating: "Hello! I'm Ilir Sevi[.] I'm the founder and owner of the American Steel Contractors and I can't wait to work with you on your next project."

26.     In or about March 2021, during a meeting on the Premises, Sevi expressly stated to Chang that Sevi registered ASC under the name of Sevi's mother-in-law (who Plaintiffs later learned to be Sinojmeri) so that a majority of ASC's income could be paid into Sinojmeri's 401(k) retirement account to avoid taxes.

27.     In or around October 2022, after Plaintiffs filed a lawsuit and Sevi had retained counsel, the ASC website was conspicuously changed so that it would ostensibly be consistent with Defendants' misleading ownership arrangements, stating instead, "Hello! I'm Ilir Sevi[.] I'm the Project Manager at the American Steel Contractors and I can't wait to work with you on your next project."

## II.    State Court Action in Pennsylvania Court of Common Pleas

28.    On or about February 22, 2022, after attempts by Plaintiffs to amicably resolve their differences with Sevi and ASC were wholly ignored, Plaintiffs commenced a lawsuit in the Pennsylvania Court of Common Pleas, Chester County (No. 2022-01384-CT), against Defendants ASC and Sevi (the "State Court Action").

29.    Plaintiffs' original Complaint in the State Court Action was eventually superseded by Plaintiffs' Second Amended Complaint, dated January 4, 2023, which added Debtor as a defendant.  A true and correct copy of such Second Amended Complaint in the State Court Action is attached hereto and incorporated herein as Exhibit 1.

30.    The State Court Action asserted claims of, *inter alia*, violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), for which Plaintiffs are entitled to recover treble damages and attorney fees. See 73 P.S. § 201-9.2. It also included claims for fraudulent inducement, breach of contract, and veil-piercing liability.[3]

31.    More specifically, the State Court Action alleges that Defendants made fraudulent statements to extract money from Plaintiffs, including: (1) repeated specific instances of credit card fraud using Plaintiffs' credit card without authorization; (2) the use of Plaintiffs' credit card to finance purchases for other construction projects unrelated to Plaintiffs; (3) inducing Plaintiffs to sign a contract which violated numerous consumer-protection laws; (4) false statements about COVID-19 causing construction delays; (5) coaxing Plaintiffs into paying for plywood for the roof but then personally pocketing the money instead of using it as promised; (6) fraudulently

---

[3] Defendants filed Preliminary Objections to Plaintiffs' Complaint in the State Court Action arguing, *inter alia*, that: (1) fraud allegations were not pled by Plaintiffs with adequate specificity; and (2) Sinojmeri was not liable for such fraud on the basis of veil piercing. The Court rejected these arguments, and overruled the Objections. The procedural system in Pennsylvania requires fact pleading, not mere notice pleading. Rule 1019(a) of the Pennsylvania Rules of Civil Procedure provides that in pleadings,"[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form[.]" Pa. R. C. P. 1019(a). Rule 1019(b) requires that "[a]verments of fraud or mistake shall be averred with particularity. Malice, intent, knowledge, and other conditions of mind may be averred generally." Pa. R. C. P. 1019(b).

inflating reported tile costs and other costs to illegally obtain payments from Plaintiffs; (7) giving personal assurances that problems would be resolved to obtain payment from Plaintiffs (but knowing that there was never any intention of performing); and (8) falsely representing that cabinets had been ordered to obtain payment Plaintiffs, and later demanding that Plaintiffs themselves order the cabinets.

32.    Further, Plaintiffs allege in the State Court Action that Debtor is liable to Plaintiffs under the applicable veil-piercing doctrine because Debtor was made the ostensible owner of ASC even though she contributed no capital in exchange for her one-hundred-percent (100%) ownership interest, and false ownership information was publicly marketed to Plaintiffs and others.

33.    In addition, under Debtor's ownership, ASC: (1) was undercapitalized to perform the business functions and obligations it contractually undertook to perform for Plaintiffs; (2) failed to adhere to the formalities of Pennsylvania limited liability companies in its operational and organizational functions; (3) substantially intermingled finances and affairs with its straw-person owner, Debtor, and its *de facto* owner, Sevi; and (4) used the organizational form of a Pennsylvania limited liability company to perpetrate frauds and unlawful conduct against Plaintiffs and other consumers, creditors, and government agencies.

**III.    Sinojmeri Bankruptcy and Plunder of Assets of ASC**

34.    On or about November 27, 2023, Defendants ASC, Sevi and Sinojmeri commenced a construction project (the "Aguila Project") on real property neighboring the Plaintiff's Premises, owned by Mr. Mario Martinez Aguila, located at 121 Pugh Road, Wayne, Pennsylvania 19087.

35. By email dated December 1, 2023 from Mr. Travis Kreiser, counsel for ASC, Sevi and Debtor in the State Court Action, to Mr. Brian J. Forgue, counsel for Plaintiffs in the State Court Action, Mr. Kreiser confirmed that the Aguila Project was being performed by his client.

36. Plaintiffs have observed that the Aguila Project has continued from about November 27, 2023 through the time of filing of this complaint, and during such time, Sevi regularly continues to appear and perform services on the Aguila Project.

37. The Aguila Project either continues to be performed by ASC, or in the alternative, the Aguila Project was fraudulently and surreptitiously transferred by Defendants to Sevi or to John Doe 1 – 10 or ABC Company 1 – 10, named as Defendants herein, whose true identities and locations are presently unknown to Plaintiffs.

38. Upon information and belief, ASC continues to perform customer projects or, in the alternative, in anticipation of the filing of the Sinojmeri Bankruptcy Case, Defendants fraudulently and surreptitiously transferred the Aguila Project and other customer projects to Sevi or to John Doe 1 – 10 or ABC Company 1 – 10, named as Defendants herein, whose true identities and locations are presently unknown to Plaintiffs.

39. Upon information and belief, ASC continues to hold other intangible and tangible property or, in the alternative, in anticipation of the filing of the Sinojmeri Bankruptcy Case, Defendants surreptitiously transferred such intangible and tangible property to Sevi or to John Doe 1 – 10 or ABC Company 1 – 10, named as Defendants herein, whose true identities and locations are presently unknown to Plaintiffs.

40. On or about March 18, 2024, Debtor filed her bankruptcy case as above-captioned, which stayed the State Court Action.

41.    On or about April 26, 2024, Debtor filed Official Form 106Sum Summary of Your Assets and Liabilities and Certain Statistical Information (the "Form 106Sum"). (Doc. No. 18.)

42.    Paragraph 19 of Debtor's Form 106Sum states that Debtor holds one-hundred-percent (100%) ownership of ASC, and that its value is Zero and 00/100 Dollars ($0.00).

43.    The initial meeting of creditors occurred on or about May 1, 2024 (the "IMC"), at which Debtor testified under oath, via remote Zoom videoconference.

44.    During the IMC, questions were posed to Debtor about the issues central to this proceeding, i.e., the assets and cessation of operations of ASC. During such questions, an icon visible to all attendees of the IMC showed that Debtor muted her microphone repeatedly so that, presumably, someone else in the room could help her answer those questions. (Debtor's bankruptcy attorney was in a different location, and was not the person communicating with Debtor.) When Debtor would begin responding to those questions, Trustee Holber repeatedly asked Debtor to unmute her microphone so that Debtor's response would be audible.

45.    During the IMC, whenever questions were posed to Debtor about sensitive issues about the operations of ASC, Debtor also repeatedly asked that such questions be repeated. Debtor was using an English-Albanian interpreter during the IMC, but when questions that were not sensitive about ASC were posed to Debtor, Debtor would routinely respond to such questions in English, without waiting for the question to be interpreted for Debtor. It was specifically when sensitive questions about ASC would be asked of Debtor that Debtor would mute her microphone, and even after the full question was asked in English, and after it was fully interpreted by the Albanian interpreter, she would ask that the question be repeated.

46.    During the IMC, when Debtor was directly asked whether she was muting and unmuting her microphone so that she could listen to someone in the room talking to her, she showed evident discomfort and did not respond to the question. The appointed Chapter 7 Trustee, Robert Holber ("Trustee Holber"), then asked Debtor whether there was someone else in the room with Debtor, and Debtor responded, "My husband is here but he doesn't know anything."

47.    Debtor did not explain why her microphone was being muted or why she needed questions repeated when her microphone was being muted.

48.    It is believed, and therefore averred, that Debtor unlawfully solicited and used surreptitious advice while testifying under oath at the IMC[4].

49.    At the IMC, Debtor testified that ASC did not stop operating because it did not have projects. Debtor testified that ASC stopped operating because ASC did a lot of work with Plaintiff Chang's family, and received "nothing in return" (despite the fact that Plaintiffs had actually paid hundreds of thousands of dollars to ASC and Sevi).

50.    At the IMC, when asked whether the dispute with Plaintiff Chang caused ASC to not have other construction projects, Debtor responded that, if the Plaintiffs had paid ASC, then ASC would be able to do more work.

51.    At the IMC, when asked whether ASC turned down other projects because ASC did not have cash flow to do them, Debtor replied, "Yes."

52.    It is believed, and therefore averred, that ASC had a history of obtaining deposits from customers which exceeded the amount allowed by Pennsylvania law. It is routine practice

---

[4] See, e.g., NuVasive, Inc. v. Absolute Med., LLC, 642 F. Supp. 3d 1320 (M.D. Fla. 2022) (invoking the Court's inherent authority to impose sanctions, and entering a default judgment, against a defendant company whose president had been sending messages to a witness during a deposition with instructions on responding to deposition questions).

of construction contractors to obtain deposits from customers to cover costs of projects in increments, so that costs do not need to be fronted.

53.     The Agreement between ASC and Plaintiffs required Plaintiffs to make an initial deposit in excess of one-third (⅓) of the total contract price, in violation of the Home Improvement Consumer Protection Act (HICPA) 73 P.S. § 517.9(10).

54.     Obtaining new deposits for new projects with new customers would have increased cash flow of ASC, not rendered the company inoperable.

55.     Also at the IMC, Debtor was asked whether there were any customers who wanted ASC to do work for them but whom ASC declined because ASC did not have cash flow to take their projects, and Debtor replied, "Yes."

56.     At the IMC, when asked whether she could name any such customers, Debtor replied that she did not have a customer list with her.

57.     When asked at the IMC whether she could even name a single such customer, Debtor replied, "No.". (This was after debtor had already testified that she managed all day-to-day activities of ASC.)

58.     At the IMC, Debtor was asked whether, in the last two (2) years, any ASC projects had gone to some other person or company, and Debtor responded that she did not know of any.

59.     Debtor was then asked at the IMC whether there was a construction project on property neighboring Plaintiff Chang which ASC had been doing, and whether that project had gone to someone else. Debtor responded that she does not know.

60.     At the IMC, Debtor was asked whether Sevi currently worked on any construction projects, and Debtor responded that she does not know anything about what he is doing.

61.    Of course, not only is Sevi married to Debtor's daughter, but he also was the primary service provider for the company (ASC), which company has been wholly owned by Debtor since 2017.

62.    On May 1, 2024, the same date as the IMC, Trustee Holber filed a Final Account, a Certification that the Estate Has Been Fully Administered, and an Application to be Discharged. (Doc. No. 20.)

<u>**COUNT I**</u>

<u>**Breach of Fiduciary Duty/Fraud**</u>
(By Plaintiffs, Individually, and Derivatively on Behalf of the Estate, and Against Defendants Sinojmeri, Sevi, John Doe 1 – 10 and ABC Company 1 - 10)

63.    Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

64.    Since about July 5, 2017 to the present, Debtor has owed fiduciary duties to ASC as a result of her position as a director, officer and owner of ASC.

65.    Pennsylvania law provides that the fiduciary duties of directors, officers and owners of a company extend not only to the company, but also to its creditors when the company is insolvent.[5]

66.    At all times relevant to the dilution, defalcation, dissipation, waste, plunder, conveyance and fraudulent transfer of assets of ASC described herein, Debtor has owed a fiduciary duty to all creditors of ASC, including Plaintiffs, as a result of Debtor's position as a director, officer and owner of ASC.

---

[5] See <u>Committee of Unsecured Creditors v. Baldwin (In re Lemington Home for Aged)</u>, 659 F.3d 282, 290 (3d Cir. 2011) (<u>citing Citicorp Venture Capital Ltd. v. Comm. of Creditors Holding Unsecured Claims</u>, 160 F.3d 982, 987-988 (3d Cir. 1988)); <u>Voest-Alpine Trading USA v. Vantage Steel Corp.</u>, 919 F.2d 206, 217 n.25 (3d Cir. 1990); <u>In re Total Containment, Inc.</u>, 335 B.R. 589, 604-605 (Bankr. E.D. Pa. 2005).

67.     Since about July 5, 2017 to the present, Sevi has owed fiduciary duties to ASC as a result of his position as a *de facto* member, *de facto* owner, manager, officer, *de facto* director, and employee of ASC.

68.     At all times relevant to the dilution, defalcation, dissipation, waste, plunder, conveyance and fraudulent transfer of assets of ASC described herein, Sevi has owed a fiduciary duty to all creditors of ASC, including Plaintiffs, as a result of Sevi's position as a *de facto* member, *de facto* owner, manager, officer, *de facto* director, and employee of ASC.

69.     At all times relevant to the dilution, defalcation, dissipation, waste, plunder, conveyance and fraudulent transfer of assets of ASC described herein, each of the Defendants John Doe 1 – 10 and ABC Company 1 – 10 owed a fiduciary duty to all creditors of ASC, including Plaintiffs.

70.     Each of the Defendants named herein breached their fiduciary duty to Plaintiffs, as creditors of ASC, by knowingly, intentionally, recklessly, and purposely diluting, defalcating, dissipating, wasting, plundering, conveying, and fraudulently transferring intangible and tangible assets of ASC, and in addition, or in the alternative, by receiving such assets from ASC, and thereby abusing the bankruptcy process to avoid payment of debts to Plaintiffs.[6]

71.     Plaintiffs and the Sinojmeri bankruptcy estate were damaged by the foregoing breaches of fiduciary duty and fraud, and are entitled to the relief sought herein.

---

[6] See id.; See also Matter of Estate of Evasew, 526 Pa. 98, 584 A.2d 910 (1990) (finding a breach of fiduciary duty and constructive fraud when a fiduciary pursued an inadequate offer rather than a substantially higher value of estate property).

**COUNT II**

**Aiding and Abetting, and Conspiracy to Breach Fiduciary Duty Owed to Insolvent
Company and its Creditors**
(By Plaintiffs, Individually, and Derivatively on Behalf of the Estate, and Against Defendants
Sinojmeri, Sevi, John Doe 1 – 10 and ABC Company 1 - 10)

72.     Plaintiffs re-allege and incorporate by reference all allegations in all proceeding

paragraphs as if fully set forth herein.

73.     Each of the Defendants named herein had fiduciary obligations to ASC and to

creditors of ASC, including Plaintiffs, as described more fully, supra.

74.     Each of the Defendants named herein expressly or, in the alternative, impliedly

and constructively, agreed to dilute, defalcate, dissipate, waste, plunder, convey, and fraudulently

transfer intangible and tangible assets of ASC, in violation of their fiduciary duty to Plaintiffs as

creditors of ASC.

75.     Each of the Defendants named herein provided material assistance to one another

in knowingly, intentionally, recklessly, and purposely diluting, defalcating, dissipating, wasting,

plundering, conveying, and fraudulently transferring intangible and tangible assets of ASC, and

in addition, or in the alternative, in receiving such assets from ASC, and thereby abusing the

bankruptcy process to avoid payment of debts to Plaintiffs.

76.     Plaintiffs and the Sinojmeri bankruptcy estate were damaged by the foregoing

actions and are entitled to the relief sought herein.

**COUNT III**

**Fraudulent Transfer**

(By Plaintiffs, Individually, and Derivatively on Behalf of the Estate, and Against Defendants
ASC, Sinojmeri, Sevi, John Doe 1 – 10 and ABC Company 1 - 10)

77.     Plaintiffs re-allege and incorporate by reference all allegations in all proceeding

paragraphs as if fully set forth herein.

78.     Section 5105 of the Pennsylvania Uniform Fraudulent Transfer Act, subsequently renamed the Uniform Voidable Transactions Act ("PUFTA"), provides, in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

12 Pa.C.S.A. § 5105.

79.     A fraudulent transfer claim may be asserted against any person who knowingly and intentionally participates in the fraudulent transfer, irrespective of whether that person was the transferee.[7]

80.     Each of the Defendants named herein violated PUFTA, 12 Pa.C.S.A. § 5101, et seq., by knowingly, intentionally, recklessly, and purposely diluting, defalcating, dissipating, wasting, plundering, conveying, and fraudulently transferring intangible and tangible assets of ASC, and in addition, or in the alternative, by receiving such assets from ASC, as more fully described herein.

81.     Plaintiffs and the Sinojmeri bankruptcy estate were damaged by the foregoing fraudulent transfers, and are entitled to the relief sought herein.

---

[7] See Voest-Alpine Trading USA Corp., 919 F.2d at 217-218 (holding transferor's fiduciaries who arranged and benefitted from a fraudulent conveyance liable); Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1083); Morganrouth v. Norris McLaughlin & Marcus, P.C., 331 F.3d 406, n.4 (3d. Cir. 2003); Gutierrez v. Gizens, 989 F.S. 1033, 1042-1043 (S.D. Cal. 1997); In re Penn Packing Co., 42 B.R. 502 (1984) (permitting damages against participants in fraudulent transfers who were neither the transferor nor the transferee).

## COUNT IV

### Aiding and Abetting, and Conspiracy to Fraudulently Transfer
(By Plaintiffs, Individually, and Derivatively on Behalf of the Estate, and Against Defendants
ASC, Sinojmeri, Sevi, John Doe 1 – 10 and ABC Company 1 - 10)

82.    Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

83.    Each of the Defendants named herein expressly or, in the alternative, impliedly and constructively, agreed to fraudulently transfer intangible and tangible assets of ASC, as described more fully, <u>supra</u>.

84.    Each of the Defendants named herein provided material assistance to one another in knowingly, intentionally, recklessly, and purposely fraudulently transferring intangible and tangible assets of ASC, and in addition, or in the alternative, in receiving such assets from ASC, as described more fully, <u>supra</u>.

85.    Plaintiffs and the Sinojmeri bankruptcy estate were damaged by the foregoing aiding, abetting, and conspiracy to commit fraudulent transfers, and are entitled to the relief sought herein.

## COUNT V

### Denying the Debtor a Discharge for Monies Obtained by False Pretense, False Representation and/or Actual Fraud, Pursuant to 11 U.S.C. § 523(a)(2)(A)
(By Plaintiffs, Individually, Against Sinojmeri)

86.    Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

87.    ASC and Sevi obtained monies from Plaintiffs by false pretense, false representation and actual fraud.

88.     It is believed and therefore averred that ASC and Sevi: (1) repeatedly committed specific instances of credit card fraud by using Plaintiffs' credit card without authorization; (2) used Plaintiffs' credit card to finance purchases for other construction projects unrelated to Plaintiffs; (3) induced Plaintiffs to sign a contract which violated numerous consumer-protection laws; (4) made false statements about COVID-19 causing construction delays; (5) misled Plaintiffs by requiring payment for plywood for their roof but failing to use the funds for said purpose; (6) fraudulently inflated tile costs and other costs to illegally obtain payments from Plaintiffs; (7) gave personal assurances that problems would be resolved in order to obtain payment from Plaintiffs (but knowing that there was never any intention of performing); and (8) falsely represented that cabinets had been ordered to obtain payment from Plaintiffs, and later demanded that Plaintiffs themselves order the cabinets.

89.     Debtor was made the ostensible owner of ASC even though she contributed no capital in exchange for her one-hundred-percent (100%) ownership interest, and this false information was publicly marketed to Plaintiffs and others.

90.     By virtue of the veil-piercing doctrine, Debtor is liable to Plaintiffs for each instance of fraud committed by Sevi and ASC.

91.     In or about March 2021, during a meeting on the Premises, after Plaintiffs had already paid ASC and Sevi, Sevi expressly stated to Plaintiff that Sevi registered the company under the name of Sevi's mother-in-law (whom Plaintiffs would later learn to be Sinojmeri) so that a majority of its income could be paid into such mother-in-law's 401(k) retirement account to avoid tax.

92.     In addition, under Debtor's ownership, ASC: (1) was undercapitalized to perform the business functions and obligations it legally undertook to perform for Plaintiffs; (2) failed to

adhere to the formalities of Pennsylvania limited liability companies in its operational and organizational functions; (3) substantially intermingled finances and affairs with its straw-person owner, Debtor, and its *de facto* owner, Sevi; and (4) used the organizational form of a Pennsylvania limited liability company to perpetrate frauds and unlawful conduct against Plaintiffs and other consumers, creditors, and government agencies.

93.    Accordingly, Debtor is liable for the fraudulent conduct committed by ASC and Sevi.[8]

94.    For the reasons stated in greater detail above, debts owed by Debtor to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT VI

### Denying the Debtor a Discharge for Monies Obtained by Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny, Pursuant to 11 U.S.C. § 523(a)(4)
(By Plaintiffs, Individually, Against Sinojmeri)

95.    Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

96.    Pennsylvania law provides that the fiduciary duties of directors, officers and owners of a company extend not only to the company, but also to its creditors when the company is insolvent, as discussed more fully, supra.

97.    Since about July 5, 2017 to the present, Debtor has owed fiduciary duties to ASC as a result of her position as a director, officer and owner of ASC.

98.    At all times relevant to the dilution, defalcation, dissipation, waste, plunder, conveyance and fraudulent transfer of assets of ASC described herein, Debtor has owed a

---

[8] See Lisa Ng & Charming Trading Co. v. Adler (In re Adler), 467 B.R. 279 (Bankr. E.D.N.Y. 2012) (finding debts of an individual debtor to be non-dischargeable because such debtor was liable for frauds committed by his company under a veil-piercing theory).

fiduciary duty to all creditors of ASC, including Plaintiffs, as a result of Debtor's position as a director, officer and owner of ASC.

99.     Debtor breached her fiduciary duty to Plaintiffs, as creditors of ASC, by knowingly, intentionally, recklessly, and purposely diluting, defalcating, dissipating, wasting, plundering, conveying, and fraudulently transferring intangible and tangible assets of ASC, and thereby preventing Plaintiffs from recovering sums owed.

100.    Debtor's actions described herein constituted larceny and embezzlement.

101.    For the reasons stated in greater detail above, debts owed by Debtor to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

<u>**COUNT VII**</u>

<u>**Denying the Debtor a Discharge for Monies Obtained by Willful and Malicious Injury to Another Entity or Property of Another Entity, Pursuant to 11 U.S.C. § 523(a)(6)**</u>
(By Plaintiffs, Individually, Against Sinojmeri)

102.    Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

103.    A discharge is not allowable where the debt to be discharged was incurred as a result of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

104.    As explained in greater detail, <u>supra</u>, after receiving extensive monies from Plaintiffs for a construction project, the Debtor willfully and maliciously injured Plaintiffs, and willfully and maliciously injured ASC in an attempt to subvert Plaintiffs' ability to recover monies owed.

105.    For the reasons stated in greater detail above, debts owed by Debtor to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**COUNT VIII**
**Denying the Debtor a Discharge for Wrongful Handling of Assets,**
**Pursuant to 11 U.S.C. § 727(a)(2)**
(By Plaintiffs, Individually, Against Sinojmeri)

106.    Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

107.    A discharge is disallowed if the debtor, "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition . . . ." 11 U.S.C. § 727(a)(2).

108.    As explained in greater detail, _supra_, the evidence demonstrates that Debtor has misled the Trustee, deprived Plaintiffs their rights as creditors, and misrepresented her financial condition to the Court.

109.    For the reasons stated in greater detail above, Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2).

**COUNT IX**
**Denying the Debtor a Discharge for False Information,**
**Pursuant to 11 U.S.C. § 727(a)(4)**
(By Plaintiffs, Individually, Against Sinojmeri)

110.    Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

111.    A discharge is disallowed if the debtor "knowingly and fraudulently, in or in connection with the case, (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise

of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs. . . ." 11 U.S.C. § 727(a)(4).

112.   As discussed more fully, _supra_, Debtor provided false information to the Court and to the Trustee about her assets.

113.   For the reasons stated in greater detail above, Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4).

### COUNT X

### Denying the Debtor a Discharge for Failure to Explain Loss of Assets, Pursuant to 11 U.S.C. § 727(a)(5)
(By Plaintiffs, Individually, Against Sinojmeri)

114.   Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

115.   A discharge is disallowed where the debtor "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

116.   As described more fully, _supra_, Debtor has provided false information, and fraudulently omitted information, and failed to fulfill her obligation to provide a satisfactory explanation or documentary proof of the disposition of significant intangible and tangible assets.

117.   For the reasons stated in greater detail above, Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(5).

## COUNT XI

## Plaintiffs' Damages Pursuant to the Home Improvement Consumer Protection Act, and the Unfair Trade Practices and Consumer Protection Law
(By Plaintiffs, Individually, Against All Defendants)

118.    Plaintiffs re-allege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

119.    To the extent the Defendants, all or any of them, are found to have violated the Home Improvement Consumer Protection Act (HICPA) 73 P.S. § 517.9(10), Plaintiffs seek damages in an amount in excess of Five Hundred Thousand Dollars ($500,000.00).

120.    To the extent the Defendants, all or any of them, are found to have violated the Unfair Trade Practices and Consumer Protection Law (UTPCPL), Plaintiffs seek damages in an amount in excess of Five Hundred Thousand Dollars ($500,000.00).

121.    Plaintiffs were damaged by the foregoing violations, and are entitled to the relief sought herein.

**WHEREFORE,** Plaintiffs CHIA-HUI CHANG and PAI-CHI TSAI, on behalf of themselves, individually, and derivatively on behalf of the Sinojmeri bankruptcy estate, pray judgment as follows:

(a)    Against Defendants, jointly and severally, in an amount in excess of Five Hundred Thousand Dollars ($500,000.00), the exact amount of which shall be determined at trial; and further

(b)    Against Defendants, jointly and severally, for treble damages pursuant to UTPCPL; and further

(c)    Against Defendants, jointly and severally, for punitive damages; and further

(d)     Denying the Debtor a discharge of all debts owed to Plaintiffs on account of monies obtained by the Debtor and/or ASC and/or Sevi by false pretenses, false representations, and/or actual fraud, pursuant to 11 U.S.C. § 523(a)(2)(A); and further

(e)     Denying the Debtor a discharge of all debts owed to Plaintiffs on account of monies obtained by the Debtor and/or ASC and/or Sevi by fraud or defalcation while acting in a fiduciary capacity, embezzlement and larceny, pursuant to 11 U.S.C. § 523(a)(4); and further

(f)     Denying the Debtor a Discharge for Monies Obtained by Willful and Malicious Injury to Another Entity or Property of Another Entity, Pursuant to 11 U.S.C. § 523(a)(6); and further

(g)     Denying the Debtor a discharge for having transferred, removed, destroyed, mutilated, and concealed, and having permitted to be transferred, removed, destroyed, mutilated, and concealed—(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition, pursuant to 11 U.S.C. § 727(a)(2); and further

(h)     Denying the Debtor a discharge for providing false information, pursuant to 11 U.S.C. § 727(a)(4); and further

(i)     Denying the Debtor a discharge for having failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities, pursuant to 11 U.S.C. § 727(a)(5); and further

(j)     Declaring that transfers of property from ASC to Sevi, John Doe 1 – 10 and ABC Company 1 – 10, are avoidable pursuant to 12 Pa.C.S.A. § 5101, et seq.; and further

(k)     Declaring that the Sinojmeri bankruptcy estate may recover the value of transfers of property from ASC to Sevi, John Doe 1 – 10 and ABC Company 1 – 10; and further

(l)     Ordering each of the Defendants to pay to the Sinojmeri bankruptcy estate the aggregate value of transfers of property from ASC to Sevi, John Doe 1 – 10 and ABC Company 1 – 10; and further

(m)     For pre-judgment and post-judgment interest, as provided by law; and further

(n)     For attorney fees, costs, disbursements and expenses incurred by Plaintiffs to bring this action; and further

(o)     For such further and other relief as this Honorable Court deems just and proper.

WETZEL GAGLIARDI FETTER & LAVIN LLC

Dated: <u>June 17, 2024</u>       By: _____

John A. Gagliardi, Esquire
*Attorneys for Plaintiffs*
122 South Church Street
West Chester, Pennsylvania 19382
Tel.: 484-887-0779
Fax: 484-887-8763
jgagliardi@wgflaw.com