UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: LILJANA SINOJMERI<br>DEBTOR | Case No. 24-10899-AMC<br>Chapter 7 |
| CHIA-HUI CHANG AND PAI-CHI TSAI,<br>PLAINTIFFS<br>v.<br>LILJANA SINOJMERI,<br>DEFENDANT | Adversary Proceeding<br>No. 24-00088-AMC |

## MARIO MARTINEZ AQUILA'S REPLY IN SUPPORT OF HIS MOTION TO QUASH AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION TO ENFORCE SUBPOENA

Mario Martinez Aguila ("Mr. Aguila"), by and through undersigned counsel, respectfully submits this Reply in Support of His Motion to Quash and in Opposition to Plaintiffs' Cross-Motion to Enforce the subpoena served upon him.

I. INTRODUCTION

It is unfathomable how Plaintiffs' claimed observation of construction work being performed at their neighbor's (Mr. Aquila's) property could justify an invasive investigation of Mr. Aguila's personal and business affairs. Plaintiffs' cross-motion confirms that Plaintiffs' totally lack any factual foundation for their sweeping discovery demands, and instead subpoena Mr. Aquila, and now come before this Court to improperly burden their neighbor, who is a third party with no involvement whatsoever in this matter. Further, it is incomprehensible that Plaintiffs' now demand that Mr. Aquila pay their attorneys fees, when it is the Plaintiffs who unnecessarily, and without justification subpoenaed Mr. Aquila and now require him to now appear before this court, when he has no involvement in this action whatsoever. Plaintiffs'

demands and actions need to be quashed, and Mr. Aquila's attorneys fees need to be reimbursed by the Plaintiffs due to the Plaintiffs' over-reaching, and improper actions. Plaintiff's overbroad and overbearing discovery requests is just a fishing expedition that is being forced on a totally innocent third party. The Federal Rules do not permit such fishing expeditions against innocent third parties.

## II. PLAINTIFFS HAVE FAILED TO ESTABLISH GOOD CAUSE FOR THEIR EXAMINATION

When a motion to quash is filed, the burden shifts to the subpoena's issuer to demonstrate good cause for the examination. *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). The inquiry focuses on "the relevance and scope of the requested information," and courts must determine whether "the likely benefits outweigh the burden or expense." *PSN Illinois, LLC v. Abbott Labs, Inc.*, 2011 U.S. Dist. LEXIS 129858, at *2 (D.N.J. Nov. 9, 2011).

In this matter, Plaintiffs' theory rests entirely on speculation. Plaintiffs allegedly observed someone named Sevi performing construction work on Mr. Aguila's next door property, and Plaintiffs then have constructed an elaborate narrative about fraudulent transfers, diverted payments, and schemes to defraud the bankruptcy estate. Plaintiffs' speculation cannot and does not establish good cause. Courts require concrete factual allegations, not conjecture based on neighborhood observations.

The distinction between legitimate discovery and improper fishing expeditions is clear. In cases where good cause has been found, the requesting party presented specific allegations of wrongdoing supported by documentation or witness statements. In this matter, Plaintiffs offer nothing beyond their observation of construction work occurring at their neighbor's house, and Plaintiffs' concocted theory about what that might mean. Plaintiffs have not alleged that their neighbor Mr. Aguila participated in any fraudulent scheme (which he has not), that Mr. Aquila

has knowledge of any wrongdoing (which he does not), or that Mr. Aquila possesses documents relevant to Plaintiffs' specific claims against Defendant.

Critically, Plaintiffs acknowledge that this Court previously dismissed their fraudulent transfer claims for failing to provide "exact amounts, dates, and names of the participants involved." Rather than cure these deficiencies through proper discovery from the parties to this litigation, Plaintiffs attempt to circumvent their evidentiary problems by targeting a non-party, seeking overbroad and burdensome discovery from their neighbor, all based on sheer speculation.

### III. THE SUBPOENA IMPOSES AN UNDUE BURDEN ON MR. AGUILA

Once good cause is established, the burden shifts to the objecting party to demonstrate the impropriety of the examination. *In re Buick*, 174 B.R. 299, 304 (Bankr. D. Colo. 1994). However, this analysis begins with recognition that "the burden of proof to demonstrate a subpoena's undue burden lies with the objector to the subpoena." *Official Committee of Unsecured Creditors v. Ashdale (In re LaBrum & Doak)*, 1998 Bankr. LEXIS 925, at *6-7 (Bankr. E.D. Pa. July 27, 1998); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

An undue burden exists when the subpoena is "unreasonable or oppressive." *In re Lazaridis*, 865 F. Supp. 2d 521, at *2 (D.N.J. 2011). Courts evaluate multiple factors to determine reasonableness:

**The Party's Need for Production**: Plaintiffs have failed to demonstrate any legitimate need for Mr. Aguila's documents. Plaintiffs entire theory rests on seeing construction work performed at Aquila's house. Plaintiffs have no evidence connecting Mr. Aguila to their claims, Plaintiffs have made no allegations that Mr. Aquila was involved in any wrongdoing, and

Plaintiffs have no basis for believing Mr. Aquila possesses relevant information beyond their pure speculation.

**The Nature and Importance of the Litigation**: This adversary proceeding concerns Plaintiffs' specific construction contract with Defendant, and Plaintiffs' allegations of fraud in that particular transaction between Plaintiffs and Defendant. Mr. Aguila had no involvement in that contract, nor in that project, nor in the alleged misconduct. The mere fact that Mr. Aquila hired someone for unrelated construction work on his property does not transform Mr. Aquila into a repository of information about Plaintiffs' dispute.

**The Relevance of the Material**: Plaintiffs cannot articulate how Mr. Aguila's financial records, business communications, or construction contracts is relevant to their claims against this Defendant. Even if Mr. Aguila hired Sevi or an affiliated entity, this fact alone provides no information about the alleged fraud involving Plaintiffs' specific project, nor any supposed scheme involving the bankruptcy estate.

**The Breadth of the Request**: The subpoena's eleven categories encompass virtually every document touching on multiple individuals and entities over a five-year period. This includes all communications, all agreements "whether or not involving construction services," all financial records, and all documents relating to any construction services. Such sweeping requests exemplify the type of "unreasonable or oppressive" discovery that courts routinely reject. *Patrick Collins, Inc. v. John Does 1-13*, 2013 U.S. Dist. LEXIS 96072, at *3 (D.N.J. July 10, 2013).

**The Burden Imposed**: Compliance would require Mr. Aguila to search through years of personal and business records, review countless documents for potential responsiveness and privilege, and disclose sensitive financial and business information; all because his neighbors

saw some construction work being done on his residence. This burden is particularly acute given Mr. Aguila's role as Managing Member of a private equity firm, where disclosure of business communications and financial information could harm competitive interests and breach confidentiality obligations.

### IV. THE REQUESTS ARE OVERBROAD AND SEEK IRRELEVANT INFORMATION

Beyond the undue burden, the subpoena's requests are facially overbroad and seek information with no conceivable relevance to this adversary proceeding. For example: Request No. 11 seeks "all documents evidencing or relating to the finances of ASC, Ilir Sevi, or Liljana Sinojmeri." Mr. Aguila is not the custodian of these parties' financial records, and Plaintiffs offer no explanation for why they believe Mr. Aquila would possess such documents.

Request No. 7 seeks all communications with Plaintiffs, their attorneys, or anyone associated with them. This broad request encompasses privileged communications and has no apparent relevance to the fraudulent transfer theory Plaintiffs espouse.

Request No. 4 seeks documents relating to all construction services Mr. Aquila has undertaken within five years, regardless of any connection to this Defendant or to the parties to this litigation. Plaintiffs' attempt to justify this as ensuring complete production rings hollow when Plaintiffs cannot articulate any specific relevance.

Courts in this Circuit consistently reject such broad discovery requests against non-parties. The party seeking discovery must demonstrate specific relevance, not merely hope that something useful might emerge. *In re Summit Glob. Logistics*, 2008 Bankr. LEXIS 5137, at *4 (Bankr. D.N.J. Apr. 9, 2008).

## V. PLAINTIFFS SHOULD PURSUE DISCOVERY FROM PARTIES TO THE LITIGATION

Perhaps most troubling is Plaintiffs' admission that they have not obtained basic information from Defendant herself. Plaintiffs acknowledge that at the creditors' meeting, Defendant claimed ignorance about customers of ASC. Rather than pursue this obvious inconsistency through party discovery, interrogatories, or depositions of Defendant (and the other parties to this litigation), Plaintiffs have targeted their neighbor, an innocent third party.

The proper course is clear: Plaintiffs should first exhaust discovery from parties who actually have knowledge of and involvement in the alleged wrongdoing. Only after demonstrating that necessary information cannot be obtained from parties, should courts permit burdensome discovery against non-parties, and even then, only upon a specific showing of relevance and necessity.

## VI. CONCLUSION

Mr. Aguila respectfully requests that this Court grant his Motion to Quash in its entirety and deny Plaintiffs' Cross-Motion to Enforce. The mere observation of construction work on a neighbor's property does not justify subjecting Mr. Aguila to invasive discovery into his business dealings, financial records, and personal matters. Plaintiffs' speculation about what this construction work might mean cannot overcome the Federal Rules' protections for non-parties against unreasonable and oppressive discovery requests.

Additionally, Mr. Aguila requests an award of his reasonable attorney's fees and costs incurred in defending against this improper subpoena, as authorized by Federal Rule of Civil Procedure 45(d)(1).

Date: 7/14/25       By:

Respectfully submitted,
BERGER LAW GROUP, P.C.

PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, Suite 114
Bryn Mawr, PA 19010
(610) 668-0774
Berger@BergerLawPC.com
Counsel for Mario Martinez Aguila