**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **IN RE: LILJANA SINOJMERI**<br>**DEBTOR** | **Case No. 24-10899-AMC**<br>**Chapter 7** |
| **CHIA-HUI CHANG AND PAI-CHI TSAI,**<br>**PLAINTIFFS**<br><br>**v.**<br><br>**LILJANA SINOJMERI,**<br>**DEFENDANT** | **Adversary Proceeding**<br>**No. 24-00088-AMC** |

**<u>REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION</u>**

## I.    INTRODUCTION

Mario Martinez Aguila respectfully submits this Reply to correct the record and to demonstrate why reconsideration of this Court's August 12, 2025 Order is warranted.

Mr. Aguila is an innocent non-party who became entangled in this dispute solely because he lives next door to Plaintiffs.  Mr. Aguila attempted to help his neighbors resolve their differences with a contractor who they both use. The statement that "No Good Deed Goes Unpunished" is applicable to this matter.

This Court's Order compelling production of five years of construction records from all of Mr. Aguila's LLC entities, and then potentially awarding attorneys' fees against Mr. Aguila represents a manifest injustice that must be corrected.

## II.    RULE 59(e) PROPERLY GOVERNS THIS MOTION

Plaintiffs' procedural objection simply misapprehends the finality of discovery orders against non-parties. Federal courts have consistently recognized that when a discovery order

completely resolves all issues before the court concerning a non-party, that order constitutes a "final order" as to that non-party, even while the underlying action continues among the actual parties to the litigation.

The seminal case of *In re Corso*, 328 B.R. 375 (Bankr. E.D.N.Y. 2005), directly addresses this issue, holding that "when, as here, the case involves a non-party, a discovery order is considered a final order and is therefore appealable." The Tenth Circuit reached the same conclusion in *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 995 (10th Cir. 1965), finding such orders "both collateral to the main suit and final as to these appellants."

The August 12, 2025 Order entered by this Court represents the complete and final adjudication of all matters between the Court and Mr. Aguila. The Order compels Mr. Aguila's compliance with the subpoena, imposes sanctions, and leaves no further issues to be resolved regarding Mr. Aguila. This finality triggers the applicability of Rule 59(e).

Even if the Court were to disagree with this analysis, the motion should be evaluated under Rule 54(b), which permits revision of interlocutory orders "at any time" before entry of final judgment, and provides the Court with broad discretion to reconsider its rulings as justice requires.

## III.    THE RECORD REVEALS MR. AGUILA'S EXTRAORDINARY GOOD FAITH EFFORTS

The true sequence of events leading to the August 6, 2025 hearing demonstrates Mr. Aguila's consistent good faith actions, and also the Plaintiffs' shifting demands. On August 5, 2025, the day before the hearing, Mr. Aguila personally approached his neighbor, Plaintiff Chia-Hui Chang, at her next door residence. This was not a casual encounter but a deliberate, good-faith attempt by Mr. Aguila to help resolve the dispute between his neighbor and a third party contractor.

During this conversation, Ms. Chang initially appeared receptive. Ms. Chang was emotional, crying while describing how the dispute with Sevi had impacted her life. Mr. Aguila expressed genuine sympathy for her situation, and explained that while he could provide information about payments made at his home, he faced confidentiality obligations regarding his various LLC entities and their business relationships. Importantly, Mr. Aguila offered to reach out to Sevi (a contractor he has used) to help bridge the gap in their on-going settlement discussions. Ms. Chang revealed that Sevi had never offered more than $25,000 to settle, and she communicated that she would accept $150,000 to resolve the matter.

Acting solely as an intermediary, Mr. Aguila spoke with Sevi (who is not the Defendant nor the Debtor in this matter) and negotiated a potential settlement offer of $75,000 to be paid to Ms. Chang. When Mr. Aguila relayed this offer to Ms. Chang and her husband later that evening, Ms. Chang's demeanor changed dramatically. She declared that her adversary proceedings in this matter had nothing to do with money at this point and that she was determined to ruin Sevi's life. Ms. Chang then stated she would go so far as to sell her house and relocate her entire family to continue funding the lawsuit with the explicit goal of forcing Sevi into bankruptcy.

Mr. Aguila responded respectfully but firmly, explaining that he had nothing to do with her dispute against Sevi, and that involving him as an innocent third party to this extent, based solely on Ms. Change having observed Sevi at his house, was unfair and created an undue burden for Mr. Aguila and for his family. Significantly, Mr. Aguila informed Ms. Chang that his wife Nicole is currently pregnant with their first child, and that being subpoenaed and brought into this action against Ms. Chang's contractor was causing Nicole considerable stress and anxiety. Despite this personal plea, Ms. Chang remained unmoved.

Ms. Chang then asked if Mr. Aguila would speak with her attorney. Mr. Aguila agreed and called Ms. Chang's attorney immediately, in front of the Changs, leaving a voicemail when the attorney did not answer. Contrary to Ms. Chang's claim that her attorney had previously tried to reach Mr. Aguila before the subpoena, Mr. Aguila never received any such communication, and Ms. Chang's attorney never returned his call.

The morning of the hearing, August 6, 2025, Mr. Aguila made one final attempt at resolution, texting Ms. Chang: **"Good morning! I can provide the information about the work performed at my house. If that is all you need I will call my attorney and let him know I have agreed to provide that very specific information."** Ms. Chang's response was telling: "I would need to defer this to our attorney if this is enough or if other info needed." Mario then added: "I understand. Please let me know as soon as possible so I can let Phil [Berger] know we've come to an agreement." When Ms. Chang stated, "We need Phil to talk to Jon [Trexler] though," and added, "Only our attorneys are clear what is needed so I am not able to decide or agree [to] anything without ou[r] attorneys talk[ing] to each other," it became clear that any prior understanding was being abandoned.

## IV.    PLAINTIFFS' RESPONSE MISCHARACTERIZES THE NEGOTIATIONS

Plaintiffs' response to the pending motion for reconsideration contains significant inaccuracies and omissions that require correction. First, Plaintiffs falsely claim that the parties reached an agreement that Mario would produce all records before the hearing. Plaintiff's claim is demonstrably false. During a conversation prior to the hearing, Mr. Aguila's counsel informed Plaintiffs' counsel that Mr. Aguila would provide specific information about payments for construction work performed at his residence by Sevi (who is not even the debtor!), by American Steel Contractors LLC, and/or by Liljana Sinojmeri. This was a unilateral offer by Mr. Aguila to

provide the relevant information, not a broader agreement to produce all construction records from all LLCs.

Second, Plaintiffs assert that Mr. Aguila has failed to comply with agreements and has allegedly shown bad faith. Just the opposite is true. Mr. Aguila has already provided payment records related to the construction at his residence. Ms. Aguila has not refused to provide relevant information; rather, Mr. Aguila has objected to the extraordinary breadth of Plaintiffs' demands for all construction records from all LLCs over five years, regardless of any connection to this bankruptcy proceeding. Also, Mr. Aguila has sought to keep the turnover of any documents confidential. Mr. Aguila has further offered to turnover copies of all checks he located regarding work performed for his LLCs by the three people/entities sought by Plaintiffs; subject to the parties entering into a Confidentiality Order, and that his deposition would need to wait two weeks until this Court ruled on the pending Motion for Reconsideration. This two week deposition postponement was required to potentially avoid multiple depositions and/or objections, depending on how this Court rules on the pending motion. A true and correct copy of the September 9, 2025 letter sent to Plaintiffs' counsel is attached hereto and made a part hereof as Exhibit "A".

Third, Plaintiffs have never attempted to address Mr. Aguila's legitimate confidentiality concerns. Despite Mr. Aguila's repeated explanations that much of the requested information involves confidential business relationships and proprietary information of multiple LLC entities, Plaintiffs have never offered to sign a confidentiality agreement, nor proposed any protective measures. Further, Plaintiffs have not reasonably narrowed their request to information actually relevant to their fraudulent transfer claims in this matter. Additionally, Plaintiffs have never

offered to reduce their demand for Mr. Aguila to pay their legal fees, nor to limit the temporal scope of their requests.

## V.     THE CURRENT ORDER IMPOSES AN UNCONSCIONABLE BURDEN ON AN INNOCENT NON-PARTY

The scope of this Court's August 12, 2025 Order's requirements cannot be justified under any standard applicable to non-party discovery. Mr. Aguila holds interests in numerous LLCs engaged in real estate acquisition, refurbishment, and management throughout Philadelphia and surrounding counties. Over the past five years, these entities have engaged numerous contractors for many projects. The vast majority of these contractors and projects have absolutely no connection to the debtor, or to Sevi (who is not the debtor), or any entity actually involved in this adversary proceeding.

Requiring Mr. Aguila to produce all construction documents, from all LLCs, for five years would necessitate disclosure of confidential business information including pricing structures, vendor relationships, proprietary renovation strategies, and sensitive financial data. This information is protected by confidentiality agreements with partners, and would provide competitors with invaluable intelligence about Mr. Aguila's business operations. The burden of identifying, reviewing, and producing such voluminous records falls entirely on Mr. Aguila, who is not a party to this matter, and who has no stake whatsoever in the underlying dispute.

Furthermore, Plaintiffs have failed to demonstrate any need for such broad discovery from Mr. Aguila. Plaintiffs' fraudulent transfer claims against the Debtor do not require production of records concerning unrelated contractors, working on unrelated properties, for unrelated entities. The only potentially relevant information would be payments made to the debtor, or her affiliates, which Mr. Aguila has already offered to provide.

## VI.    THE AWARD OF ATTORNEYS' FEES LACKS ANY LEGAL BASIS

The Order's potential award of attorneys' fees against Mr. Aguila is particularly egregious given the undisputed facts. Mr. Aguila did not ignore the subpoena or refuse to comply. Mr. Aguila timely filed objections raising legitimate concerns about scope, burden, and confidentiality. Mr. Aguila engaged in good faith negotiations with Plaintiffs, going so far as to personally visit his neighbor to attempt a global resolution of her dispute with a third party contractors. Mr. Aguila , through counsel, also offered to provide relevant information before the hearing. Mr. Aguila has already produced payment records for construction at his residence.

Mr. Aguila's objections were reasonable and his efforts to resolve the dispute were extraordinary for a non-party. The fact that Mr. Aguila did not capitulate to Plaintiffs' maximalist demands simply does not constitute sanctionable conduct.

## VII.    THE EQUITIES OVERWHELMINGLY FAVOR RECONSIDERATION

This case presents the paradigmatic example of discovery abuse directed against a non-party to this matter. Mr. Aguila's only connection to this dispute is geographical—he happens to live next door to the Plaintiffs. When Mr. Aguila learned of their dispute with Sevi (a third party contractor), as a good neighbor, Mr. Aguila attempted to help since he knew the third party contractor. Mr. Aguila offered to mediate, Mr. Aguila tried to facilitate settlement discussions, and Mr. Aguila agreed to provide relevant information about work performed from this third party contractor at his residence. For these good faith efforts, Mr. Aguila has been "rewarded" with an Order requiring production of thousands of documents, requiring disclosure of confidential business information, and potentially requiring the payment of Plaintiffs' attorneys' fees! That result, and this Court's August 12, 2025 Order, is chilling and wholly unwarranted.

The message that this Court's Order sends to innocent third parties is deeply troubling. Non-parties, who attempt to assist in resolving disputes, apparently should now be punished with crushing discovery burdens! That is not the message that should be delivered. The federal rules actually protect non-parties from undue burden precisely because they have not chosen to participate in litigation. This Court's August 12, 2025 Order weaponizes the service of unreasonable subpoenas on innocent third parties, and has already caused Mr. Aguila to incur significant costs, fees, time away from family and his business, and potential business harm all due to his attempts to help his neighbors.

The Court should also consider the personal toll this matter has taken on Mr. Aguila and his family. His wife is pregnant with their first child, and this litigation (for which neither Mr. Aguila nor his wife are a party) has caused significant stress during what should be a joyful time. Mr. Aguila has spent considerable time and resources responding to a dispute in which he has no interest. This Court's current Order would require him to spend countless additional hours, and thousands of dollars, compiling irrelevant (and protected) documents.

**CONCLUSION**

For all these reasons, Mr. Aguila respectfully requests that the Court reconsider its August 12, 2025 Order and:

1. Grant reconsideration under Rule 59(e) or, alternatively, Rule 54(b);

2. Limit the subpoena to require production only of documents relating to construction services performed by Debtor Liljana Sinojmeri, American Steel Contractors LLC, and/or Ilir Sevi at Mr. Aguila's residence;

3. Reduce the temporal scope to three years;

4. Vacate the award of attorneys' fees against Mr. Aguila;

5.   Permit appropriate confidentiality protections for any required production;

6.   Grant Mr. Aguila's attorneys fees and costs for properly filing a Motion to Quash

an outrageous and burdensome subpoena; and

7.   Grant such other relief as the Court deems just and proper.

Mr. Aguila has acted with extraordinary good faith throughout these proceedings. Mr.

Aguila does not deserve to bear the burden of Plaintiffs' scorched-earth litigation strategy.

Reconsideration is warranted to correct this manifest injustice.

Respectfully submitted,
BERGER LAW GROUP, P.C.

Date: 9/11/25          By: *Phillip D. Berger*
PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, Suite 114
Bryn Mawr, PA 19010
Berger@BergerLawPC.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

**IN RE: LILJANA SINOJMERI**
**DEBTOR**

**Case No. 24-10899-AMC**
**Chapter 7**

---

**CHIA-HUI CHANG AND PAI-CHI TSAI,**
**PLAINTIFFS**

**v.**

**LILJANA SINOJMERI,**
**DEFENDANT**

**Adversary Proceeding**

**No. 24-00088-AMC**

---

<u>**CERTIFICATE OF SERVICE**</u>

I, Phillip D. Berger, Esquire, hereby certify that a true and correct copy of the forgoing

was served on all parties on this date via the Court's ECF filing system.

Respectfully submitted,
BERGER LAW GROUP, P.C.

Date: 9/11/25

By: *Phillip D. Berger*
PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, Suite 114
Bryn Mawr, PA 19010
(610) 668-0774
Berger@BergerLawPC.com
Counsel for Plaintiff