**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| LILJANA SINOJMERI, | : | |
| | : | |
| Debtor, | : | Chapter 7 |
| | : | Case No. 24-10899-AMC |
| | : | |
| | : | |
| CHIA-HUI CHANG and PAI-CHI TSAI, | : | |
| | : | Adversary No. 24-00088-AMC |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| LILJANA SINOJMERI, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFFS' MOTION FOR AN ORDER**
**HOLDING MARIO MARTINEZ AGUILA IN CONTEMPT**

Plaintiffs CHIA-HUI CHANG and PAI-CHI TSAI ("Plaintiffs"), by and through their undersigned counsel, hereby respectfully submit this motion, pursuant to Fed. R. Civ. P. 37, 45(g), Fed. R. Bankr. P. 7037, 9016, 11 U.S.C. § 105, and the Court's inherent authority, for an order: (1) finding Mario Martinez Aguila ("Aguila") in contempt of this Court's Order dated August 12, 2025 (the "08/12/25 Order"); (2) enforcing the 08/12/25 Order and the subpoena served upon Aguila dated May 27, 2005 (the "Subpoena"); (3) imposing upon Aguila per diem fines until Aguila has complied with the 08/12/25 Order and Subpoena; and (4) requiring Aguila to pay additional fees and costs of Plaintiffs incurred as a consequence of Aguila's non-compliance with the Subpoena and 08/12/25 Order.

**SUMMARY OF THE ARGUMENT**

1.      Aguila does not claim that he has complied with the 08/12/25 Order compelling him to produce documents and attend a deposition. Aguila disagrees with the 08/12/25 Order.

2.      Aguila also claims that his motion for reconsideration operates as a stay of the 08/12/25 Order, even though Aguila did not seek or obtain a stay. The legal authorities clearly state that a motion for reconsideration does not operate as a stay, and those legal authorities have been provided to Aguila. Again, he disagrees.

3.      Aguila also asserts that complying with the 08/12/25 Order would cause "competitive harm" to his business. Aguila has not moved for a protective order to obtain the confidentiality protections which may be available to him, though he could have done so as early as May 2025, when he was initially served with the Subpoena that is the subject of the 08/12/25 Order.

4.      Plaintiffs have also, at all times, expressed a willingness to negotiate a confidentiality stipulation, and even a willingness to keep documents confidential until Aguila can obtain such stipulation or a ruling on a motion for a protective order. Aguila has made no serious effort to engage in that process.

5.      In any event, Aguila has not articulated any serious basis for confidentiality concerns. Thus far, these confidentiality issues appear to be a pretext for his non-compliance. Aguila has been invited by Plaintiffs to provide some basic information *about* the evidence in his possession to clarify confidentiality issues, but Aguila will not even do that.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

6.      This Court has jurisdiction to determine this matter under 28 U.S.C. §§ 157, 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (H), (I), (J) and (O).

7.      The predicates for the sought relief are found in Section 105(a) of Title 11 of the United States Code, and Rules 7037 and 9016 of the Federal Rules of Bankruptcy Procedure. 11 U.S.C. § 105(a); Fed. R. Bankr. P. 7037, 9016.

**FACTUAL BACKGROUND**

**I.      THE SUBPOENA AND THE COURT ORDER**

8.      Plaintiffs served Aguila with the Subpoena dated May 27, 2025, together with fees required by law, directing Aguila to attend a deposition on June 19, 2025, and to produce certain documents. (Case No. 24-00088 ECF 28 ¶ 4; Case No. 24-00088 ECF 28-2.)

9.      Aguila filed his notice of motion to quash the Subpoena on June 20, 2025, which was after the deadline to appear at a deposition as stated in the Subpoena. (Case No. 24-00088 ECF 28; Case No. 24-00088 ECF 29; Case No. 24-00088 ECF 30.) Aguila did not move to modify the Subpoena, and he did not move for a protective order or accept Plaintiffs' invitations to negotiate the terms of a protective order. (See id.) Plaintiffs filed a cross-motion to enforce the Subpoena and for an award of fees and costs. (Case No. 24-00088 ECF 32; Case No. 24-00088 ECF 39.) The underlying merits of those motions were addressed at length in Plaintiffs' prior submissions, and those submissions are incorporated herein by reference. (See id.)

10.      The 08/12/25 Order denied Aguila's motion, and granted Plaintiffs' cross-motion. (Case No. 24-00088 ECF 44.) The 08/12/25 Order provided, in relevant part, that Aguila was ordered to appear upon notice of a re-scheduled deposition, and that Aguila shall produce documents requested in the Subpoena one (1) week prior to such deposition.

11.      No stay of the 08/12/25 Order was sought by Aguila, by motion or otherwise, and none was issued by the Court. Likewise, Aguila filed no motion for a protective order regarding any documents or information in his possession, custody or control falling within the scope of the Subpoena.

12.      Aguila filed notice of a procedurally improper motion for reconsideration on August 25, 2025. (Case No. 24-00088 ECF 46; Case No. 24-00088 ECF 49.) Even if that motion

3

were procedurally proper it is devoid of merit, for reasons stated in Plaintiffs' response to that motion. (Case No. 24-00088 ECF 50.) Plaintiffs' response to that motion is also incorporated herein by reference. (See id.)

## II.    VIOLATIONS OF THE COURT ORDER

13.    Plaintiffs served a notice of deposition upon Aguila on August 29, 2025. Submitted herewith as Exhibit 1 is a true and correct copy of that notice of deposition, accompanied by the letter with which it was served. That notice of deposition provided, *inter alia*, that Aguila's deposition would take place on September 15, 2025. (See Exhibit 1.)

14.    Pursuant to the express terms of the 08/12/25 Order, a deadline was imposed upon Aguila to produce all documents responsive to the Subpoena one (1) week prior to the date of the deposition, or September 8, 2025. (See id.)

15.    As explained in greater detail below, Aguila has only produced two (2) documents to Plaintiffs, which he acknowledges to be fewer documents than those covered by the Subpoena and 08/12/25 Order. Aguila claims that large volumes of documents in his possession and control fall within the scope of the Subpoena and 08/12/25 Order (which is a position Plaintiffs and the Court have been unable to evaluate because Aguila gives no serious explanation as to the details of what he actually possesses). Aguila has also refused to appear for the deposition scheduled for September 15, 2025.

## III.    COMMUNICATIONS AMONG COUNSEL FOLLOWING THE ORDER

16.    Various letters were exchanged among counsel following the 08/12/25 Order, and prior to the service of the notice of Aguila's rescheduled deposition. These largely concern Aguila's disagreements with the 08/12/25 Order, and they are discussed in Plaintiffs' response to the motion for reconsideration. Submitted herewith as Exhibit 2 is a true and correct copy of a

letter from Phillip D. Berger ("Berger"), Aguila's counsel, to Brian K. Hanstein ("Hanstein"), Plaintiffs' counsel, dated August 7, 2025. Submitted herewith as Exhibit 3 is a true and correct copy of a letter from John A. Gagliardi ("Gagliardi"), Plaintiffs' counsel, dated August 11, 2025. Submitted herewith as Exhibit 4 is a true and correct copy of a letter from Berger to Gagliardi and Hanstein, dated August 20, 2025.

17.   Following service of the notice of Aguila's rescheduled deposition, additional correspondence was exchanged among counsel. This correspondence demonstrates that Aguila has not complied and will not comply with the Subpoena or the 08/12/25 Order. Submitted herewith as Exhibit 5 is a true and correct copy of an email from Berger to Gagliardi and Lisa Folkert, a paralegal assisting Gagliardi, dated September 8, 2025. Submitted herewith as Exhibit 6 is a true and correct copy of a letter sent by Jonathan T. Trexler ("Trexler"), personal counsel of Plaintiffs, to Berger, dated September 8, 2025, and which was sent following Berger's email of the same date. Submitted herewith as Exhibit 7 is a true and correct copy of a letter from Berger to Trexler dated September 9, 2025. Submitted herewith as Exhibit 8 is a true and correct copy of a letter from Trexler to Berger dated September 9, 2025, which was sent following Berger's email to Trexler of the same date.

18.   This correspondence also demonstrates that, despite Aguila's flagrant violations of the 08/12/25 Order, Plaintiffs continue to attempt, in good faith, to: (1) make provisional confidentiality arrangements so that documents can immediately be produced, subject to a later protective order; (2) obtain enough information about the documents in Aguila's possession to evaluate assertions of confidentiality, and to further evaluate whether some documents falling within the scope of the Subpoena and 08/12/25 Order may not be needed by Plaintiffs; and (3) obtain information informally from Aguila, which may even obviate the need for a deposition

5

(but only if it is demonstrated to Plaintiffs that all evidence relevant to the fraudulent transfer issues is being produced by informal means).

19.    This correspondence also demonstrates that Plaintiffs' steadfast attempts to resolve these issues without Court intervention have failed.

**IV.    AGUILA'S REPLY IN SUPPORT OF RECONSIDERATION FURTHER SUPPORTS A FINDING OF CONTEMPT**

20.    Today, September 11, 2025, Aguila filed a reply in further support of his motion for reconsideration (the "Reply"). (Case No. 24-00088 ECF 54.) That Reply also lends no support to Aguila's position, and it further supports the relief sought in this motion for contempt. It relies upon flatly untrue factual allegations and misstatements of controlling law.

21.    Aguila's motion is procedurally improper because the 08/12/25 Order is not a final order or judgment that can properly be the subject of a Rule 59(e) motion for reconsideration. An order of contempt following an order to enforce a subpoena is a final order, but the order enforcing a subpoena, by itself, is not a final order or judgment. See Auto Servs. Co. v. KPMG, LLP, 537 F.3d 853, 856 (8th Cir. 2008) (noting that, for purposes of Rules 54(a) and 59(e), as well as Appellate Rule 4(a)(4)(A)(iv), a "'judgment' encompasses a final judgment and an appealable interlocutory order").[1]

22.    Aguila cites In re Corso to support his motion. 328 B.R. 375 (Bankr. E.D.N.Y. 2005). However, that case involved the appeal of an order of contempt. See id. Aguila does not mention this to the Court.

23.    Aguila also cites the 1965 decision of the United States Court of Appeals for the Tenth Circuit, Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir. 1965). Indeed, that

---

[1] Aguila also invites the Court to decide a motion he has not made, one for reconsideration pursuant to Rule 54(b). The Court should not accept that invitation, but even if it did, such motion would be without merit, as further discussed in Plaintiffs' motion submissions and herein.

Court did find an order enforcing a subpoena to be a final, appealable order, even though no subsequent contempt order had been issued. See id.

24.     What Aguila does not tell the Court is that the holding in Covey Oil Co. has been rejected by the Third Circuit, as well as the U.S. Supreme Court, and many other U.S. Courts of Appeals. See Borden Co. v. Sylk, 410 F.2d 843 (3d Cir. 1969) (specifically rejecting the Tenth Circuit's holding in Covey Oil Co.); United States v. Ryan, 402 U.S. 530 (1971) (reaffirming its prior holding that an order enforcing a subpoena is not a final, appealable order); United States v. Anderson, 464 F.2d 1390 (D.C. Cir. 1972) (collecting cases from U.S. Courts of Appeals disagreeing with Covey Oil Co.).

25.     In his Reply, Aguila also claims that Chang told Aguila on August 5, 2025 that Plaintiffs were only motivated to ruin Sevi's life and force him into bankruptcy. (Case No. 24-00088 ECF 54 at 3.) In fact, on August 5, 2025, Aguila told Chang that money would never be collected from Sevi anyway because Sevi would file for bankruptcy and move to another state or back to Albania, and that a bankruptcy would ruin Sevi's life. Chang told Aguila that Sevi will either need to file for bankruptcy or continue the litigation pending in State Court. At this point in their discussions, Chang knew that Aguila was inventing reasons for Plaintiffs to abandon Plaintiffs' meritorious claims, and Chang knew that Aguila had no argument on the merits. As a way of conveying her seriousness of achieving justice, Chang told Aguila that Plaintiffs will pursue their claims against Sevi no matter what, even if Plaintiffs are forced to sell Plaintiffs' home and relocate to a less expensive place to pursue an international collection process. Somehow, Aguila now attempts to rewrite this conversation in a way that suggests that Plaintiffs are pursuing claims without legal merit. (Case No. 24-00088 ECF 54 at 3.)

26.     Aguila's Reply also faults Trexler for not returning a direct call from Aguila on the evening of August 5, 2025, even though returning such call would have been a clear violation of the rules of professional conduct governing Trexler. (Case No. 24-00088 ECF 54 at 4.) See 22 N.Y. Comp. Codes R. & Regs. § 1200.4.2 (prohibiting an attorney from communicating directly with a person represented by counsel about the subject of such representation); N.J. Rules of Prof. Conduct 4.2 (same).

27.     Because Trexler did not violate Trexler's ethical duties, Aguila uses this as purported evidence that Trexler never attempted to contact Aguila (before Aguila was represented by counsel) to informally obtain information without a subpoena. (Case No. 24-00088 ECF 54 at 4.) This is not only a non sequitur, but it is absolutely untrue. On about May 21, 2024, Trexler placed a telephone call to Aguila at (215) 375-0982 (the same number used by Aguila to call Trexler on August 5, 2025), Trexler left a voicemail message for Aguila. In his voice message to Aguila of about May 21, 2024, Mr. Trexler identified himself by name and as an attorney representing Plaintiffs, asked to be called back about questions concerning a dispute involving Plaintiffs and ASC, and left a telephone number. Aguila never responded. Submitted herewith as Exhibit 9 is a true and correct copy of an AT&T record of Trexler's telephone calls spanning the period of May 11, 2024 to June 10, 2024, with redactions. Exhibit 9 demonstrates that Trexler did place this call to Aguila, even though Aguila denies it, and the message Trexler left for Aguila was approximately one (1) minute long.

28.     Chang also spoke with Aguila's wife, in or around November 2023, which was promptly followed by a letter from Debtor's counsel in State Court threatening litigation arising from contacts with Aguila.

29.     In spite of all this history, and in spite of Aguila's continued stonewalling to the present day, Aguila now appears to take the position that Aguila would have cooperated in full if Plaintiffs had just made more attempts prior to the Subpoena. (Case No. 24-00088 ECF 54 at 4.)

30.     In his Reply, Aguila also states: "First, Plaintiffs falsely claim that the parties reached an agreement that Mario would produce all records before the hearing. Plaintiff's [sic] claim is demonstrably false." (Case No. 24-00088 ECF 54 at 4.) He also states: "Second, Plaintiffs assert that Mr. Aguila has failed to comply with agreements and has allegedly shown bad faith." (Case No. 24-00088 ECF 54 at 5.) Aguila does not cite any part of the record concerning the alleged point he disputes because Plaintiffs never made that point. Plaintiffs never alleged that such agreements were made; Plaintiffs allege that Aguila's prior allegations about agreements being reached were false.

31.     In his motion for reconsideration, Aguila originally asserted that the 08/12/25 Order was erroneous because the parties were reached agreements on the issues before the hearing. Plaintiffs took great pains in their response to that motion to describe the discussions which took place, and to make clear that no agreement was reached. Aguila had proposed producing some limited records on August 5, 2025 and August 6, 2025, but those proposals were always conditioned upon Plaintiffs conceding various points which Plaintiffs were, at all times, emphatically unwilling to concede. Now, Aguila claims that it is Plaintiffs who are pretending there were agreements. He cannot explain when Plaintiffs pretended such thing because his allegations are simply untrue. (Case No. 24-00088 ECF 54 at 4-5.)

32.     Aguila's Reply also claims that Plaintiffs have been unwilling to address confidentiality issues. He attaches an Exhibit A, which is a letter from Berger dated September 9, 2025, which purportedly proves his point. Of course, Aguila does not submit to the Court the

various correspondence (submitted by Plaintiffs herewith) demonstrating that Plaintiffs have made extensive efforts to understand what, if any, confidentiality issues might legitimately exist so that they can be addressed.

33. Aguila's Reply also re-hashes vague arguments about confidentiality concerns and undue burdens concerning documents relating to his LLCs. He did not respond, however, to Plaintiffs' invitation to provide preliminary information about these LLCs and these projects so that a serious assessment could be made as to whether production of some types of documents otherwise within the scope of the Subpoena could be avoided, or what kind of specific confidentiality protections could be crafted. (See Exhibit 3, Exhibit 6, Exhibit 8.)

34. Aguila's Reply again faults the Court for an award of legal fees which, in his words, "LACKS ANY LEGAL BASIS." (Case No. 24-00088 ECF 54 at 7.) He does not discuss the legal authorities repeatedly cited to him in Plaintiffs' submissions. (Id.) And, of course, he does not cite any legal authorities at all. (Id.)

## DISCUSSION

### I.   A MOTION FOR RECONSIDERATION DOES NOT STAY AN ORDER

35. Aguila insists that his motion for reconsideration of the Order stays the Order by operation of law. (See Exhibit 5 ("It is Mario's position that the motion for reconsideration effectively operates to stay enforcement of the underlying order . . . .").) This is entirely wrong. Even if Aguila's reconsideration motion were procedurally proper, which it is not, and even if Aguila made arguments with merit concerning the underlying issues, which he did not, such motion would not toll or stay or otherwise affect the full enforceability of the Order. See Collura v. White, 12 Civ. 4398 (E.D. Pa. Nov. 13, 2014) ("Although plaintiff has not suggested that filing his Motion for Reconsideration in any way relieves him of his obligation to comply with

10

the Court's Order dated October 16, 2013, the Court notes that '[m]erely filing a motion for

reconsideration does not stay an impeding [sic] deadline.'") (quoting In re Republic of Ecuador,

Nos. C-10-80225 MISC CRB et al., 2011 WL 736868, at *4 (N.D. Cal. Feb. 22, 2011)). See also

United States v. Stine, 646 F.2d 839, 845 (3d Cir. 1981) ("If a person to whom a judge directs an

order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply

promptly with the order pending appeal."); New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l

Dev. Corp., No. 99-cv-2436, 2000 WL 377513 (S.D.N.Y. Apr. 12, 2000); United States v.

Ottman, No. 05-cr-10, 2008 WL 4371975, at *1 (M.D. Ga. Sept. 22, 2008); Burgess v. Williams,

No. 11-cv-316, 2012 WL 1268608, at *2 n.1 (N.D.N.C. April 16, 2012).

36.     Aguila's position as to the enforceability of the Order is wrong, Plaintiffs have

provided legal authorities to Aguila demonstrating that he is wrong, Aguila can cite no legal

authority supporting his position, yet Aguila holds fast to his position. (See Exhibit 5, Exhibit 6,

Exhibit 7, Exhibit 8.)

## II.    LEGAL STANDARD FOR CONTEMPT

37.     This Court is authorized to hold a person in civil contempt under Rule 45(g) of

the Federal Rules of Civil Procedure, which provides that "[t]he court for the district where

compliance is required . . . may hold in contempt a person who, having been served, fails without

adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g) (made

applicable in bankruptcy cases by Fed. R. Bankr. P. 9016). See also In re Ergle, 656 B.R. 483

(Bankr. D.S.C. 2024) (finding the debtor's spouse in civil contempt, and issuing per diem

sanctions, for failing to obey a subpoena and failing to comply with prior Court Orders to appear

for examination).

38.    A Bankruptcy Court's authority to hold a person in contempt also derives from the inherent authority of any Court to regulate the conduct of those appearing before it. The Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105. See also In re Joubert, 411 F.3d 452, 455 (3d Cir. 2005) (stating that 11 U.S.C. § 105 provides Bankruptcy Courts with a contempt remedy); Stephen W. Grosse, P.C., 84 B.R. 377, 386 (Bankr. E.D. Pa. 1988); In re Walters, 868 F.2d 665 (4th Cir. 1989); In re French Bourekas, Inc., 175 B.R. 517, 525 (Bankr. S.D.N.Y. 1994); In re Faiella, No. 05-50986 (RTL), 2008 WL 1790410, at *6 (Bankr. N.D.J. Apr. 18, 2008) ("A bankruptcy court is vested with the power 'to enforce its subpoenas and orders by the power of contempt.'") (quoting Riley v. Sciaba (In re Sciaba), 334 B.R. 524, 526 (Bankr. D. Mass. 2005).

39.    "Such orders are necessary 'to protect the integrity of the Bankruptcy Code as well as the judicial process,' and to enable bankruptcy courts to maintain order and control over the cases before them." In re Schemelia, 607 B.R. 455, 462 (Bankr. D.N.J. 2019) (quoting In re Antonelli, No. 11-20255/JHW, 2012 WL 280722, at *13 (Bankr. D.N.J. Jan. 30, 2012)).

40.    In order to establish legal grounds for contempt, a moving party must show: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that decree was in the movant's favor; (3) the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) the movant suffered harm as a result. Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 2000); Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000).

41. "[A] valid order is one whose terms are specific and definite." In re Meyers, 344 B.R. 61, 65 (Bankr. E.D. Pa. 2006) (citing Close v. Edison (In re Close), No. 93-17145DWS, Adv. No. 03-0153, 3003 WL 22697825, at *10 (Bankr. E.D. Pa. Oct. 29, 2003)).

42. Willfulness is not a necessary element of civil contempt. Robin Woods, Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994).

43. Contempt is also an appropriate remedy where a person has made "'coy or incomplete disclosures' that force the court to 'ferret out pertinent information.'" In re Jackson, 401 B.R. 333, 339 (Bankr. N.D. Ill. 2009) (quoting In re Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991).

44. In addition to the foregoing, Rule 37 of the Federal Rules of Civil Procedure, which is made applicable to adversary proceedings in bankruptcy by Rule 7037, provides that a person ordered to be deposed or to provide disclosures may be held in contempt for failure to obey. Fed. R. Civ. P. 37; Fed. R. Bankr. P. 7037.

45. Rule 37 further provides for an award of the movant's reasonable expenses, including attorney fees. Id.

### III. GROUNDS FOR CONTEMPT ORDER AGAINST AGUILA

46. Plaintiffs' have demonstrated that all elements are met for an order of contempt to be made, to-wit: (1) the Order is enforceable, and Aguila has knowledge of it by and through his counsel; (2) the Order was in Plaintiffs' favor; (3) Aguila violated the Order by refusing to attend a deposition on the date required by the Order, and by failing and refusing to provide all documents falling within the scope of the Order on or before the date required for compliance; and (4) Plaintiffs' have suffered harm because they are unable to obtain the documents and

information they need, and because they have had to expend fees and costs in attempting to secure compliance. See Roe v. Operation Rescue, 54 F.3d at 137.

## IV.    APPROPRIATE REMEDIES AND PUNISHMENTS

47.    "A bankruptcy court has broad discretion to fashion a remedy for civil contempt", and "sanctions may include actual damages, attorney's fees, and, when appropriate, punitive damages." In re Gregg, 428 B.R. 345 (Bankr. D.S.C. June 9, 2009). Bankruptcy courts may impose regimes of per diem fines that they analogize to confinement. Id. Per diem fines, imposed for each day the "contemnor fails to comply with an affirmative court order . . . exert a constant coercive pressure" to comply. Id. Once the contemnor obeys and complies, he is considered to have purged himself of contempt. International Union, United Mine Workers of America, 512 U.S. at 828 (1994); Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994).

48.    Punishment for civil contempt is intended to be coercive, imposed primarily to induce compliance, giving the contemnor the opportunity to purge itself of the contempt and secure cessation of the punishment. In re Shafer, 63 B.R. 194 (Bankr. D. Kan. 1986). The U.S. Supreme Court's expression of this principle is that, by compliance with the order, the contemnor "carries the keys of his prison in his own pocket." Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 498 (1911). The purposes of sanctions in civil contempt proceedings also include compensating the harmed party for losses sustained because of the contempt. Faiella, 2008 WL 1790410 at *6; Sciaba, 334 B.R. at 526; Robin Woods Inc., 28 F.3d at 400; McDonald's Corp. v. Victory Investments, 727 F.2d 82, 87 (3d Cir. 1984).

49.    Imprisonment and daily fines are proper sanctions for contempt when the contemnor is able to purge the contempt by committing an affirmative act. See International

Union, United Mine Workers of America, 512 U.S. at 828; In re Kennedy, 633 B.R. 293, 296 (Bankr. D.S.C. 2021) (authorizing the debtors' counsel to disburse to the debtors $100.00 per day from insurance proceeds held in his escrow account, beginning 11 days after entry of the order imposing sanctions and continuing until such time the creditor fully complies or the funds exhausted, if the offending creditor failed to timely comply with the order); In re Gregg, 428 B.R. 345, 348 (Bankr. D.S.C. 2009) (imposing civil contempt sanction of $500.00 per day, beginning 10 days after entry of order imposing sanction, and explaining such was "necessary in order to coerce [the offending party's] compliance with this Court's Orders"); Riley v. Sciaba (In re Sciaba), 334 B.R. 524, 526 (Bankr. D. Mass. 2005) (imposing per diem sanctions to accrue each day until the debtor's mother produced the documents requested by subpoena).

50.    Aguila is a sophisticated person of considerable means, being the managing member of a private equity firm and holding (still undisclosed) interests in various (still undisclosed) limited liability companies holding investment properties. (Case No. 24-00088 ECF 36 at 4-5; Case No. 24-00088 ECF 46 ⁋ 23.) Coercing compliance with the Order, evidently, will require substantial per diem sanctions because the Court's past actions were clearly insufficient.

51.    Furthermore, Plaintiffs have incurred, and continue to incur, unnecessary expenses, including attorney fees and costs, due to Aguila's failure to fulfill his obligations. Chambers v. NASCO, Inc., 501 U.S. 32, 53-54 (1991) (finding that an award of attorney fees is an appropriate part of a larger civil contempt sanction).

52.    The Court has also used its finite resources to address Aguila's non-compliance, resources which could have been allocated to many other tasks.

## CONCLUSION

53.     Based upon the foregoing, Plaintiffs respectfully request that Plaintiffs' motion be granted in its entirety.

## LOCAL BANKRUPTCY RULE 9014 CONSENT

54.     Plaintiffs consent to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## LOCAL BANKRUPTCY RULE 8013-1(c) CERTIFICATION

55.     Undersigned counsel for the movants certifies that the movants have sought consent to the relief sought in Plaintiffs' motion, and that consent has been denied in whole or in part.

WETZEL GAGLIARDI FETTER & LAVIN LLC


Dated: September 11, 2025          By: s/John A. Gagliardi
                                       John A. Gagliardi, Esquire
                                       Brian K. Hanstein, Esquire
                                       *Attorneys for Plaintiffs*
                                       122 South Church Street
                                       West Chester, Pennsylvania 19382
                                       Tel.: 484-887-0779
                                       Fax: 484-887-8763
                                       jgagliardi@wgflaw.com

16