# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re<br><br>LILJANA SINOJMERI.<br><br>       Debtor. | Case No. 24-10899-AMC<br>Chapter 7 |
| CHIA-HUI CHANG and PAI-CHI TSAI,<br>       Plaintiffs,<br>v<br>LILJANA SINOJMERI,<br>       Defendant. | Adv. No. 24-00088-AMC |

**OBJECTION OF MARIO MARTINEZ AGUILA TO
PLAINTIFFS' SECOND CLAIM FOR FEES AND
COSTS AND REQUEST FOR HEARING**

Third-Party Mario Martinez Aguila ("Martinez" or "Objector") hereby respectfully objects to Plaintiffs' second request for payment of fees and costs pursuant to this Court's Order Finding Mario Martinez Aguila in Contempt (ECF 77, "Contempt Order"), as set forth in the Declaration of John A. Gagliardi, Esq. in Support of Plaintiffs' Application for Fees and Costs Related to Motion for Contempt (ECF 94, "Gagliardi Declaration") and the Declaration of Jonathan T. Trexler, Esq. in Support of Plaintiffs' Application for Fees and Costs (ECF 93, "Trexler Declaration"; collectively, "the Declarations"), and in support thereof states as follows:

**Introduction**

1. Plaintiffs' request for an award of fees for the work of his out-of-state, non-admitted attorney, Mr. Trexler – whose work constitutes three-quarters of the fees sought – should be denied.

2. Plaintiffs seek an award of fees primarily for the work of an attorney who is not admitted to practice in this Court, in general or *pro hac vice*. While courts frequently include the fees of "consulting" attorneys who are not admitted to practice before the court in a fee award, an attorney who is doing most of the work, deciding strategy, and engaging in substantive work on the case is not a consulting attorney. A court should not award fees for the work of such an attorney if they do not take the basic – and critical – step of seeking admission to practice before the court.

3. Moreover, Mr. Trexler's decision not to seek admission *pro hac vice* raises troubling questions. To be admitted *pro hac vice*, he would have had to disclose his disciplinary history of suspension from practicing in various courts. It appears that Mr. Trexler was suspended from practicing in the U.S. District Court for the Southern District of New York, the U.S. Tax Court, and other courts in 2017. While his suspension has been lifted, it appears that this disciplinary history may have led to his decision not to seek *pro hac vice* admission.

4. Mr. Trexler's decision not to seek admission *pro hac vice* in this case, in general and considering his failure to disclose his disciplinary history, warrants disallowance of his fees.

**Background**

5. In the Declarations, Plaintiffs seek to recover $12,262.50 in fees. Approximately 26% of these fees were incurred by his local counsel Mr. Gagliardi and his firm, and 74% were incurred by Mr. Trexler and his firm.

6. While Mr. Gagliardi and his colleagues are admitted to practice in this Court, Mr. Trexler admits in his Declaration that he and his colleagues are not admitted

to practice before this Court. Nor have they sought to be admitted *pro hac vice* for purposes of this proceeding.

7. This Court's rules – like nearly every bankruptcy court – generally require that attorneys either be admitted to practice before the local federal courts or be admitted *pro hac vice* – in order to be allowed to "practice before this Court." L. Bankr. R. 2090-1(a).

8. To be admitted *pro hac vice* in an adversary proceeding, an attorney must file an application, in which he or she shall: "(A) identify all federal, state or other courts of which the attorney is a member in good standing or admitted and holding inactive status; (B) state whether the attorney has been disbarred or suspended from the bar of any court or otherwise subjected to professional discipline; and (C) state whether the attorney is currently subject to any disciplinary proceedings." L. Bankr. R. 2090-1(b)(2).

9. Attached hereto as Exhibit 1 is a Memorandum Sur Order entered by the U.S. Tax Court on August 31, 2017 (the "Suspension Memorandum"). According to the Suspension Memorandum, Mr. Trexler was suspended indefinitely from practicing by the U.S. District Court for the Southern District of New York in January 2017. Ex. 1, Suspension Memorandum at 1-2. As a result, the U.S. Tax Court also suspended him from practice indefinitely. *Id*. The Suspension Memorandum also reflects that other courts suspended him as a result of the Southern District of New York suspension, though not all did so. *Id*. At 2.

10. Mr. Trexler's suspension in the Southern District of New York was lifted in September 2023, less than a year before this action was filed. Attached hereto as Exhibit 2 is an Order entered by the U.S. District Court for the Southern District of New York on September 26, 2023.

**Fees Cannot Be Awarded for the Work of Lead Counsel
Who is Not Admitted to Practice Before the Court**

11. A court "has a duty to maintain the integrity of proceedings and the confidence of the public." *Gsell v. Rubin & Yates, LLC,* 41 F. Supp. 3d 443, 446 (E.D. Pa. 2014). One of the ways courts do so is through "restricting admission to practice to individuals who are familiar with and are committed to the ethical and procedural standards required of officers of the Court." *Id.* (citing *Tolchin v. Supreme Court of N.J.*, 111 F.3d 1099, 1110-11 (3d Cir. 1997)).

12. To fulfill this duty, courts – including this Court – enact rules requiring that attorneys appearing before the court be admitted to practice before it. As noted above, this Court generally limits practice to those who are admitted to practice before the District Court – for which one must be admitted to practice in Pennsylvania to qualify – and those who apply to be admitted *pro hac vice*. *See* L. Bankr. R. 2090-1.

13. Our District Court has recognized one key consequence of admission to practice: A party may recover fees incurred on account of the work of an attorney who is **not** admitted to practice before the court only if the attorney acts as a "consulting" attorney, but not where the non-admitted attorney is the "lead" attorney. *Gsell*, 41 F. Supp. 3d at 450.

14. Courts use five factors to distinguish between consulting and lead attorneys:

> Where an out-of-state attorney's participation was limited to that of a consultant whose services are compensable despite lack of pro hac vice admission, that attorney likely:
>
> > (1) refrained from direct client contact;
> >
> > (2) refrained from contact with opposing counsel;
> >
> > (3) did not sign or draft substantial portions of pleadings, especially the complaint;

>    (4) restricted his participation in the case to reviewing motions, drafting internal memos, and advising lead counsel, such that his work was supervised by, and ultimately "filtered" through the lead attorney;
>
>    (5) recorded only a modest number of hours on a case, relative to lead counsel and other admitted attorneys working on a case.

*Id.* (citations omitted).

15.     In *Gsell*, the Court applied these factors where the out-of-state attorney incurred 86% of the fees sought, took the primary role in drafting pleadings, and worked independently of local counsel, and concluded the out-of-state attorney was lead counsel, not consulting. *Id.* at 451-52. As a result, the Court denied all of the out-of-state attorney's fees, even though the recovery of fees in that case was mandatory. *Id.* at 452; *see* 15 U.S.C. 1629k(a)(3). *See also Idaho Sporting Cong., Inc. v. Alexander,* 23 F. App'x 713, 714 (9th Cir. 2001) ("Failure of ISC counsel to properly and timely secure *pro hac vice* admission before the district court was a sufficient reason to deny ISC's application for attorneys' fees….").

16.     Numerous other cases have adopted a similar test to distinguish between consulting and lead counsel and deny fees for non-admitted lead counsel. *See, e.g., Caplan v. Premium Receivables LLC,* No. 2:15-CV-474, 2015 WL 4566982, at *5 (W.D. Pa. July 29, 2015) (denying fees for out-of-state attorney not admitted *pro hac vice*); *Lee v. Robinson, Reagan & Young,* PLLC, No. 3:14-CV-0748, 2015 WL 3442097, at *5-*8 (M.D. Tenn. May 28, 2015) (same); *Bilazzo v. Portfolio Recovery Assoc.,* 876 F.Supp.2d 452 (D.N.J. 2012) (same); *Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 169 (2d Cir. 1966) (same). *Cf. Kazran v. Silverio,* No. CV 19-5129, 2020 WL 6321577 (E.D. Pa. Oct. 27, 2020) (applying same test as *Gsell* to determine whether fees could be awarded for

work of out-of-state attorney not admitted *pro hac vice*); *Krapf v. Nationwide Credit Inc.,* Civ. No. 09–00711, 2010 WL 4261444 at *2 (C.D.Cal. Oct. 21, 2010) (same); *Winterrowd v. American General Annuity Ins.,* 556 F.3d 815 (9th Cir. 2009) (same). *Cf. also Navarro v. Monarch Recovery Mgmt. Inc.,* No. CIV.A. 13-3594, 2014 WL 2805244, at *6 (E.D. Pa. June 20, 2014) (analyzing question of allowing fees for non-admitted out-of-state firm in same firm as local attorney).

### Mr. Trexler was Lead Counsel, Whose Fees Cannot Be Awarded Because He Was not Admitted to Appear Before this COurt

17. The *Gsell* factors overwhelmingly support the conclusion that Mr. Trexler served as lead counsel for the Plaintiffs, not consulting counsel supervised by Mr. Gagliardi, and his fees therefore cannot be the basis for a fee award.

18. *First,* Mr. Trexler did not refrain from direct client contact. To the contrary, the Declarations show that he had numerous contacts with his clients. To the extent Mr. Gagliardi had any contact with the Plaintiffs, Mr. Trexler also participated in those conversations. Not so for Mr. Trexler. *See, e.g.,* Trexler Declaration time entries for 9/8/25, 9/11/25, 9/22/25, 9/23/25, 9/28/25; Gagliardi Declaration time entry for 9/23/2025.

19. *Second,* rather than refraining from contact with opposing counsel, Mr. Trexler actively participated on behalf of Plaintiffs in communications with Mr. Berger, Mr. Martinez's prior counsel, including taking the lead in drafting correspondence. *See, e.g.,* Trexler Declaration time entries for 9/8/25, 9/9/25.

20. *Third,* although Mr. Trexler did not sign the pleadings – and indeed is not mentioned on many of them – the Declarations make clear he played the primary role in

drafting the pleadings, including the motion for contempt that led to the instant proceedings. *See, e.g.,* Trexler Declaration time entries for 9/10/25, 9/11/25.

21. *Fourth,* and relatedly, Mr. Trexler did not restrict his participation in the case to reviewing motions, drafting internal memos, and advising local counsel, such that his work was supervised by, and ultimately "filtered" through the local attorney. Rather, the Declarations show that Trexler was running the show. *Compare* Trexler Declaration *with* Gagliardi Declaration.

22. *Fifth,* Mr. Trexler did not record only a modest number of hours on a case, relative to local counsel and other admitted attorneys working on a case. To the contrary, Mr. Trexler and his firm incurred nearly three times the amount of fees that Mr. Gagliardi's firm incurred.

23. In other words, every one of the *Gsell* factors supports the conclusion that Mr. Trexler was lead counsel, not consulting counsel for Mr. Gagliardi.

24. Accordingly, because Mr. Trexler was not admitted, this Court should deny an award for his fees for the same reason the District Court denied non-admitted counsel's fees in *Gsell*.

**Mr. Trexler's Avoiding Disclosure of His Prior Suspension Supports the Denial of His Fees**

25. Furthermore, Mr. Trexler's history of suspension from practice before various courts raises additional questions about the propriety of awarding his fees.

26. As noted above, in 2017, Mr. Trexler was suspended from practicing before some – but not all – of the courts before which he was admitted to practice. He was reinstated in at least some of them in 2023, less than a year before this adversary proceeding was filed.

27. To be admitted *pro hac vice* in this adversary proceeding, Mr. Trexler would have had to disclose his prior suspensions, even though he had been reinstated in at least some courts. *See* L. Bankr. R. 2090-1(b)(2).

28. The fact that he did not seek *pro hac vice* admission begs the question whether Mr. Trexler decided not to seek admission *pro hac vice* because he would have had to disclose his prior suspensions.

29. Moreover, his decision not to file a *pro hac vice* application – and disclose therein his prior suspensions – deprived this Court of the opportunity to conduct any inquiry into his past suspension and how that impacts his fitness to practice before this Court.

30. That choice was not without consequences; if he was not admitted generally or *pro hac vice* to appear before this Court, he is not allowed to recover fees in a case in which he acts as lead counsel.

31. That's precisely what happened here. Plaintiffs' lead counsel, Mr. Trexler, chose not to seek *pro hac vice* admission. Given that choice, Plaintiffs cannot recover his fees.

**Request for Hearing**

32. To the extent the Court finds any material factual issue or deems further explanation necessary as to these objections, Mr. Trexler's suspensions, the specifics of Plaintiffs' billing, or the proportionality and necessity of any fee award, Objector respectfully requests a hearing pursuant to Fed. R. Civ. P. 37(a)(5).

WHEREFORE, Mario Martinez Aguila respectfully requests that this Court enter an order denying Plaintiffs' request for fees to the extent it seeks an award of Mr. Trexler's fees.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated: November 7, 2025

By: */s/ Matthew A. Hamermesh*
Matthew A. Hamermesh
One Logan Square, 27th Floor
Philadelphia, PA 19103
T: (215) 568-6200
F: (215) 568-0300
E: mhamermesh@hangley.com

*Counsel for Mario Martinez Aguila*