# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re<br><br>**LILJANA SINOJMERI.**<br><br>Debtor. | Case No. 24-10899-AMC<br>Chapter 7 |
| **CHIA-HUI CHANG and PAI-CHI TSAI,**<br><br>Plaintiffs,<br><br>v<br><br>**LILJANA SINOJMERI,**<br><br>Defendant. | Adv. Proc. No. 24-00088-AMC |

**REPLY IN SUPPORT OF MARIO MARTINEZ AGUILA'S (1) OBJECTIONS TO PLAINTIFFS' SECOND FEE REQUEST AND (2) MOTION FOR RELIEF FROM OCTOBER 22, 2025 ORDER PURSUANT TO BANKRUPTCY RULE 9024**

Third-Party Mario Martinez Aguila ("Martinez") respectfully submits this reply in support of his motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, seeking relief from this Court's Order dated October 22, 2025 (the "Motion"), ECF 117, and in support of his Objections to Plaintiffs' Second Fee Request, ECF 107.

**INTRODUCTION**

1. Mr. Martinez files this reply brief to address the myriad and meritless procedural and other arguments made by Plaintiffs and clarify the law in their responses to his Motion, ECF 142, and his Objections to their Second Fee Request, ECF 115.

2. Plaintiffs' arguments all rest on the foundation that Mr. Martinez could have found and raised his concerns regarding Mr. Trexler's failure to apply for *pro hac vice* admission sooner. But the key issue is not when Mr. Martinez discovered and raised such information, but that for nearly a year and a half, Mr. Trexler acted as lead counsel in the case, failed to apply for leave to

appear *pro hac vice*, and, even when submitting his declaration in support of his fee requests, did not disclose information regarding his role in this case and his interim suspension to the Court.

3.  Mr. Martinez has not accused and is not accusing Mr. Trexler of any ethical violations. Rather, Mr. Martinez challenges Plaintiffs' claims for fees based on their and their counsel's conduct and decisions concerning how to proceed in this case, where their lead counsel is not, and has not sought to be (until now), admitted *pro hac vice* in this Court.

## MR. MARTINEZ HAS PRODUCED ALL RELEVANT DOCUMENTS IN HIS POSSESSION

4.  On December 2, Mr. Martinez produced all invoices and checks between Mr. Martinez and his companies, on the one hand, and the debtor and her son-in-law and entities associated with them, on the other. While these invoices and checks are just a small fraction of the unduly burdensome and overly broad discovery sought in the subpoena, they also represent the only documents relevant to Plaintiffs' allegations.

5.  Plaintiffs contend that Mr. Martinez's LLCs "suddenly changed course" when they stopped issuing checks to American Steel Contractors LLC and started issuing checks to Sevi Construction Company. ECF 142, ¶ 15. Regardless of whether Plaintiffs view this information as support for their claims *against the debtor*, these documents do not implicate Mr. Martinez in the slightest. All they indicate is that he issued checks to a company he had contracted with for service, and then at some point, he began to issue checks to a different, related entity. Regardless of whether Mr. Martinez did so because the second company did the work for him or he simply paid the company that invoiced him for the work, nothing here suggests that Mr. Martinez or his companies received any fraudulent transfers. Any implication or attempt to inculpate Mr. Martinez based on this document production is off-base and inappropriate.

2

6. Plaintiffs' attempt to use documents Mr. Martinez recently produced to implicate him in some sort of conspiracy "vindicating Plaintiffs' Subpoena" and "show[ing] why [Mr. Martinez] did not comply", ECF 142, at 4, is grossly mistaken. Mr. Martinez is not the debtor and has no relationship with the debtor. Mr. Martinez's only interest in this case is in protecting the privacy and interests of his business, which is his right. *See* Fed. R. Civ. P 45(d)(1); *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 240 (E.D. Pa. 2014) ("[T]he 'standards for non-party discovery require a stronger showing of relevance than for party discovery.'") (quoting *Zukowski v. PECO*, No. 93-cv-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994)); *400 Walnut Assocs., L.P. v. 4th Walnut Assocs., L.P. (In re 400 Walnut Assocs., L.P.)*, 475 B.R. 217, 230 (Bankr. E.D. Pa. 2012) ("When served with a subpoena, a non-party may protect itself[.]"). While Plaintiffs may believe the documents produced by Mr. Martinez are inculpatory *against the debtor* or helpful to their case *against the debtor*, the documents raise no questions or implications about Mr. Martinez's conduct.

7. Regardless, nothing in Plaintiffs' responses undermines Mr. Martinez's arguments in his Motion and Objection.

## DISCUSSION

### AS A THRESHOLD MATTER, MR. MARTINEZ'S MOTION IS PROPERLY MADE

8. Plaintiffs raise myriad arguments urging the Court to dispose of the Motion without considering the merits. These arguments are meritless.

**The doctrine of judicial estoppel is inapplicable here.**

9. Plaintiffs invoke judicial estoppel to bar the Motion. ECF 142, at 19. "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). However, "[i]t is not intended to eliminate all inconsistencies,

3

however slight or inadvertent." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996).

10. Relevant here, judicial estoppel exists because "a party should not be allowed to *gain an advantage* by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* at 358 (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981)) (emphasis added). Accordingly, Third Circuit jurisprudence takes into consideration "[w]hether the party sought to be estopped *benefitted from* its earlier position." *Id.* at 361 (emphasis added).

11. Plaintiffs contend that Mr. Martinez's current position is inconsistent with his prior position because he did not previously argue that Plaintiff could not recover fees for counsel who was not admitted *pro hac vice*. ECF 142 ¶ 57.

12. This argument fails for two reasons. First, these arguments are not remotely inconsistent. They are simply different arguments supporting the same conclusion.

13. Second, even if they were somehow inconsistent, judicial estoppel is inappropriate because Mr. Martinez did not benefit from his initial objections (indeed, the Court granted Plaintiffs' First Fee Request, awarding all billed fees).

**Third parties may file Rule 60(b) motions.**

14. Plaintiffs make the remarkable argument that third parties who are the subject of a court order are not entitled to relief under Rule 60(b) from those very orders. ECF 142 at 21.

15. Plaintiffs read Rule 60(b) literally, but not seriously. While generally only parties may seek relief pursuant to Rule 60(b), several circuit courts have permitted a non-party to bring a Rule 60(b) motion "when its interests are strongly affected." *See In re Lawrence*, 293 F.3d 615,

4

627 n.11 (2d Cir. 2002) (collecting cases of the Second, Sixth, and Ninth Circuits allowing non-parties to raise Rule 60(b) motions). [1]

16. Likewise, the Third Circuit Court of Appeals has previously allowed a non-party to pursue a direct appeal of a district court's approval of a class action settlement where the non-party participated in settlement negotiations and the party's interests were affected by the district court's approval of the settlement agreement. *Binker v. Pennsylvania*, 977 F.2d 738, 745 (3d Cir. 1992). While not perfectly analogous, the reasoning behind allowing the non-party in *Binker* to bring a direct appeal supports Mr. Martinez's right to bring this Motion: the equities favor hearing the challenge. Mr. Martinez participated in the underlying litigation and has a clear stake in the challenged Order. *See id.* (citing *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1504 (9th Cir. 1990)).

17. Of course, this must be the case. It would be antithetical to the American system of law and would offend notions of due process to subject an individual to the Court's order and leave

---

[1] Plaintiffs rely on two cases from the Court of Appeals for the D.C. Circuit that limit Rule 60(b) relief to parties or their legal representatives. Those cases, however, are distinguishable because the movants sought relief from an order not directly bearing on their own rights or obligations.

In *Ratner v. Bakery and Confectionary Workers International Union*, appellants were counsel who had received fees in a class action that was later settled. 394 F.2d 780, 781 (D.C. Cir. 1968). After settlement, appellants sought to reopen the dismissed case to seek supplemental fees and expenses, and the lower court dismissed the motion for lack of jurisdiction. *Id.* On appeal, while the Court did note that Rule 60(b) "by its own terms is available only to a 'a party or his legal representative,'" the specific rationale the Court provides is that appellants did "not assert entitlement to notice as a party or as counsel for any party to the case." *Id.* at 782. And in *Agudas Chasidei Chabad of United States v. Russian Federation*, the Court affirmed the denial of the movant's Rule 60(b) motion to vacate a default judgment, again, because the movant "did not participate in any way in the underlying … litigation resulting in the judgments it seeks to have vacated." 19 F.4th 472, 477 (D.C. Cir. 2021). Of particular note, the movant had previously filed a motion to quash, which the lower court denied. *Id.* The movant never appealed or sought relief from *that order* and instead sought relief from orders not directly related to its interests and which it did not litigate. *Id.* Not so here.

5

them powerless to seek relief from such an order. U.S. Const. Amend. V ("No person shall…be deprived of life, liberty, or property, without due process of law[.]").

18. Here, while Mr. Martinez is not a *named party* to the adversarial proceeding, he is *certainly* a "part[y] to the judgment or to the cause in which the judgment was entered," *Ratner*, 394 F.2d at 782, inasmuch as he participated in the litigation underlying the Order, and the Order imposes a monetary obligation on him. He is accordingly entitled to bring a Rule 60(b) motion.

### Mr. Martinez's motion is timely.

19. Plaintiffs also argue that Mr. Martinez's motion is untimely. ECF 142, at 33.

20. A Rule 60(b) motion must be brought within a reasonable amount of time, "and for reasons (1), (2), and (3), no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1).

21. While Rule 60(b) motions are not considered timely simply because they are filed within the one-year time limit, a motion is brought within a reasonable time frame when "the interest that litigation must someday end [is] only slightly impinged, while the countervailing interest that justice be done [is] seriously at stake." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). Moreover, "temporal proximity between the judgment and [the] motion" can also indicate the motion was brought within a reasonable time frame. *Moolenaar v. Gov't of V.I.*, 822 F.2d 1342, 1348 (3d Cir. 1987) (comparing motion before the court with motion in *Good Luck Nursing Home*).

22. Plaintiffs do not attempt to explain why—or cite case law supporting that—it was unreasonable delay here to file the Motion approximately one month after entry of the challenged order.

23. Rather, Plaintiffs restate their arguments on the merits of Mr. Martinez's 60(b)(2) request: because the evidence relied upon by Mr. Martinez was readily available sooner, his Motion

6

is untimely. While such an argument may be grounds for denying relief based on Rule 60(b)(2), it does not render the Motion *untimely*.

24. The Motion was brought in a reasonable amount of time and the Court should decide it on the merits.

### MR. TREXLER IS LEAD COUNSEL HERE UNDER THE *GSELL* FACTORS

25. Plaintiffs' responses to both the Motion and Mr. Martinez's Objections to Plaintiffs' Second Fee Request, ECF 107, center around the argument that the *Gsell* factors are inapplicable and for that reason, Plaintiff is entitled to recover Mr. Trexler's fees. These arguments are based on a molehill that Plaintiff has made into a mountain: an apparent difference between the Eastern District of Pennsylvania's Local Rule 83.5.2(b), which this Court has not adopted, and Local Bankruptcy Rule 2090-1(a) and Rule 5.5 of the Pennsylvania Rules of Professional Conduct. The distinction Plaintiff attempts to make is one without a difference, and the *Gsell* factors should apply here to limit Plaintiffs' recovery of fees to those incurred by Mr. Gagliardi.

26. As an initial point, Mr. Martinez does not currently oppose Mr. Trexler's application to be admitted *pro hac vice* to this Court, ECF 142 ¶¶ 59-62, nor is he accusing Mr. Trexler of the unauthorized practice of law, ECF 142 ¶¶ 52-53.[2] Admittedly, Mr. Martinez does not know the

---

[2] Plaintiffs bristle at the language in some cases that have adopted tests similar to *Gsell*'s to distinguish between consulting and lead counsel and deny fees for non-admitted lead counsel. While some of those cases—*Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815 (9th Cir. 2009) and *Krapf v. Nationwide Credit Inc.*, No. 09-00711, 2010 WL 4261444 (C.D. Cal. Oct. 21, 2010)—deny fees on finding the unadmitted attorneys engaged in the unauthorized practice of law, they do so on the same basis that courts in this circuit simply decline to award attorneys' fees. Indeed, *Gsell* cites these cases in developing the five-factor test used in courts in this circuit. *Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443, 449-50 (E.D. Pa. 2014). Mr. Martinez does not presently contend that Mr. Trexler has engaged in the unauthorized practice of law, and such a finding is not necessary to grant the relief he seeks.

The *Gsell* Court also cites *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161 (2d Cir. 1966), in developing its five-factor test for determining whether counsel is acting as lead or consulting counsel. While *Gsell* cites to the *Spanos* decision before it was reversed *en banc*, the wisdom from

whole story as to why Mr. Trexler waited until nearly a year and a half into this adversary proceeding to seek *pro hac vice* admission. Mr. Martinez has sought discovery about this and will pursue it (or not) at the appropriate point.

27. Rather, the only issue presently before the Court in Mr. Martinez's pleadings is the application of the *Gsell* factors, which allow a party to recover fees for an attorney acting as lead counsel (as Mr. Trexler is) only if the attorney is admitted *pro hac vice*. *Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443, 446 (E.D. Pa. 2014).

### The Local Bankruptcy Rule is substantively the same as District Court Local Rule 83.5.2(b).

28. Plaintiffs hang much of their argument on a false distinction between the District Court's local rule at issue in *Gsell* and this Court's local rules concerning *pro hace vice* admission. Plaintiffs contend that *Gsell* does not govern here because this Court has not adopted the Eastern District of Pennsylvania's Local Rule 83.5.2(b). That rule requires that an attorney not "actively participate" if not a member of the bar of that Court or admitted *pro hac vice*:

> An attorney who is not a member of the bar of this Court shall not actively participate in the conduct of any trial or pre-trial or post-trial proceeding before this Court unless, upon motion of a member of the bar of this Court containing a verified application, leave to do so shall have been granted.

---

that initial decision survived, even though the disposition did not. On reconsideration *en banc*, the *Spanos* Court awarded fees to the out-of-state attorney, but "limit[ed] [its] holding to the situation here presented, where a citizen has invited a duly licensed out-of-state lawyer to *work in association with a local lawyer* on a federal claim or defense." *Id.* at 171 (emphasis added). *Spanos* still contemplates a lead—assisting relationship between the in-state and out-of-state attorneys. *Id.* at 170 ("[T]his must comprehend the right to bring *to the assistance of an attorney admitted in the resident state* a lawyer licensed by 'public act' of any other state who is thought best fitted for the task, and to allow him to serve in whatever manner is most effective, subject only to valid rules of courts as to practice before them.") (emphasis added).

8

Local Rules of the United States District Court for the Eastern District of Pennsylvania 83.5.2(b) (rev. May 8, 2023).[3]

29. By comparison, Local Bankruptcy Rule 2090-1(a) provides that an attorney "may *practice* before this Court" when the attorney is either admitted to practice in the District Court for the Eastern District of Pennsylvania, admitted *pro hac vice*, or authorized to appear given special circumstances irrelevant here. Local Bankruptcy Rule 2090-1(a) (rev. Dec. 1, 2024) (emphasis added).

30. Plaintiffs argue that because the Court has not adopted Local Rule 83.5.2(b), the Local Bankruptcy Rules impose no restrictions on "participation" or "active participation" by other attorneys. ECF ¶ 38. But, based on the plain text of Rule 2090-1(a), this is not the case. Indeed, the Bankruptcy Rules' lack of the "actively" modifier cuts against Plaintiffs here. The District Court rule's wording implies a distinction between "active" and "consulting" lawyering, whereas "practicing" without a modifier, as in this Court's rule, creates no distinction. Arguably, any lawyer participating in a case in any way must be admitted *pro hac vice*.

31. Moreover, Plaintiffs point out that the Local Bankruptcy Rules have adopted Rule 5.5 of the Pennsylvania Rules of Professional Conduct. But Rule 5.5, like *Gsell,* limits an out-of-state attorney to "assisting" an admitted attorney unless they themselves are admitted *pro hac vice*.:

> (c) A lawyer admitted in another United States jurisdiction or in a foreign jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:
>
> …
>
> (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, *or a person the lawyer is assisting*, is authorized by law or order to

---

[3] Rule 83.5.2(b) is the only local District Court rule governing *pro hac vice* admission. Thus, while it can be read as prohibitory, it is also permissive – like Local Bankruptcy Rule 2090-1(a) – in that it allows an attorney admitted *pro hac vice* to "actively participate."

9

appear in such proceeding or reasonably expects to be so authorized[.]

Pa. R. Prof. C. 5.5(c)(2) (rev. Oct. 15, 2024) (emphasis added).

32. All three of these rules—Local Rule 83.5.2(b), Local Bankruptcy Rule 2090-1(a), and Rule 5.5(c)—are essentially the same. If a lawyer intends to actively participate and practice as lead counsel in a case, they must be admitted to the Court, either generally or *pro hac vice*. Only a lawyer working in a consulting or assisting capacity need not seek *pro hac vice* admission.

33. At bottom, the distinction Plaintiffs attempt to create between the Eastern District's requirements and the Local Bankruptcy Rules' and Rules of Professional Conduct's requirements for who must secure *pro hac vice* is without a difference.[4]

**Federal Rule of Bankruptcy Procedure 9029(c) is of no moment.**

34. Relatedly, Plaintiffs argue that "imposing a sanction on Plaintiffs would violate [Rule 9029(c) of the Federal Rules of Bankruptcy Procedure.]" ECF 142 at 14. Plaintiffs' argument rests on a misreading of Rule 9029(c) and their false distinction between the District Court and Bankruptcy Court local rules.

35. In its entirety, Rule 9029(c) reads:

> (c) Procedure When There Is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, these rules, the Official Forms, *and the district's local rules*. For any requirement *set out elsewhere*, a sanction or other disadvantage may be imposed for noncompliance only in the alleged violator was given actual notice of the requirement in the particular case.

*Id.* (emphasis added). Plaintiffs argue that the text of Rule 9029(c) requires that, to apply any rule of the District Court that this Court has not explicitly adopted, actual notice of the requirement is

---

[4] Plaintiffs also note that this Court has adopted District Court Local Rule 83.6, unlike Rule 83.5.2. This is irrelevant. As the comment to Local Bankruptcy Rule 2090-1(a) notes, only the District Court has the power to suspend or disbar attorneys from practicing, which is governed by District Court Local Rule 83.6.

10

required. Under the plain text of Rule 9029, however, such notice is required for requirements "set out elsewhere," in places *other than* "federal law, [the Federal Bankruptcy Rules], the Official Forms, and the district's local rules." *Id.*

36. Moreover, Plaintiffs' argument here assumes that there is a meaningful difference between the requirements of Local Rule 83.5.2(b), compared to Local Bankruptcy Rule 2090-1(a) and Pennsylvania Rule of Professional Conduct 5.5(c). As discussed above, there is none.

37. In short, Federal Rule of Bankruptcy Procedure 9029(c) is irrelevant here.

### Trexler's work in the case warrants lead counsel designation under *Gsell* and a denial of fees.

38. Plaintiffs next argue that a denial of fees is not warranted because Trexler has not been lead counsel in the case. ECF 142 at 14-15.

39. As an initial point, the *Gsell* factors govern this question. As described above, Plaintiffs' attempt to line draw between "actively participat[ing]" and "practic[ing] before this Court" is unconvincing. Accordingly, while this Court has not yet applied the *Gsell* factors in determining whether an out-of-state attorney's fees are recoverable, this Court should follow and apply *Gsell* as a plainly applicable decision from the governing District Court in determining whether Mr. Trexler acted as lead counsel and, relatedly, whether his fees are recoverable.

40. As Mr. Martinez explained in detail in his opening brief in support of the Motion, ECF 117, and his Objections to Plaintiffs' Second Fee Request, ECF 107, the *Gsell* factors support a determination that Mr. Trexler has acted as lead counsel and, because he is not admitted *pro hac vice* to this Court, Plaintiffs cannot recover his incurred fees.

41. Plaintiffs fail in their attempt to distinguish between *Gsell* and cases applying it, and cases from courts in other circuits that declined to "reduce fees for work performed by out-of-state attorneys." The cases Plaintiffs rely on allowed recovery of fees for out-of-state counsel

11

where, for example, lead admitted counsel supervised work of out-of-state counsel and were in constant communication about the case, the out-of-state attorney did not appear before the District Court to argue or sign briefs, and where an out-of-of-state attorney did not represent herself as an attorney or appear before the Court. *See* ECF 142 ¶¶ 41, 49. This is precisely Mr. Martinez's argument: that Mr. Trexler acted as lead counsel here and was not merely supervised by Mr. Gagliardi. ECF 117 ¶¶ 33-39.

42. Plaintiffs argue Mr. Trexler's first drafts of discovery motions billed at a lower rate indicate that he is not lead counsel. But the bills Mr. Trexler provided make clear that he did not just work on the first drafts of the motions, but did most of the work on them. Above and beyond that, however, Mr. Trexler spoke directly with the clients, communicated with opposing counsel, did not "filter" his work through Mr. Gagliardi, and incurred far more time on the case than Mr. Gagliardi's firm. This all points to the fact that Mr. Trexler was indeed lead counsel.

43. To the extent Plaintiffs rely on Mr. Zhang as translator, that has nothing to do with whether Mr. Trexler did most of the work and was lead counsel in the case.

44. Finally, Plaintiffs essentially argue that the point here is moot, because Mr. Trexler's delayed application for *pro hac vice* admission will enable him to recover fees for services performed prior to such admission. ECF 142 ¶¶ 50-51 (citing *New Century Found. v. Robertson*, No. 3:18-cv-00839, 2019 WL 6492901 (M.D. Tenn. Dec. 3, 2019)). Plaintiffs rely on *New Century Foundation*, where the court allowed recovery of fees that the attorney incurred before he was admitted *pro hac vice*, despite that court's local rules requiring that any attorney representing a party enter a notice of appearance (and thus be admitted to practice before the court) "promptly." *Id.* at *4. In that case, however, the attorney started working on the case in September 2018, filed his motion for *pro hac vice* admission in January 2019, and requested fees in September 2019. *Id.*

12

at *2. Of the fees awarded by the court, about half were completed before the attorney filed his motion for *pro hac vice* admission. *Id.* This is quite distinguishable from the case here, where Mr. Trexler performed all the work for which fees are requested before applying *pro hac vice*, and only applied *pro hac vice* more than a year after his work began and after an objection was made.

45. Based on the above facts and the arguments made in both Mr. Martinez's Motion and Objections to Plaintiffs' Second Fee Request, this Court should not permit Plaintiffs to recover Mr. Trexler's fees because he acted as lead counsel even though he was not admitted *pro hac vice*.

### MR. MARTINEZ'S MOTION SHOULD BE GRANTED ON THE MERITS

46. Having disposed of plaintiff's preliminary arguments, the Motion should be granted on the merits.

### Rule 60(b)(1)

47. Plaintiffs' response to Mr. Martinez's argument for relief under Rule 60(b)(1) is nothing beyond their argument that Mr. Trexler is entitled to fees on the merits, despite *Gsell*'s holding. It fails for the reasons set forth above.

48. It follows, then, that to award fees to Mr. Trexler when the *Gsell* factors indicate he acted as lead counsel and he has not been admitted to this Court *pro hac vice* constitutes mistake or inadvertence. Fed. R. Civ. P. 60(b)(1).

49. Moreover, Plaintiffs urge that Mr. Martinez applies the wrong standard for "excusable neglect" in arguing that his delayed raising of this argument is excusable. ECF 142 ¶ 74. Plaintiffs and Mr. Martinez, however, apply the same four-factor test to determine whether neglect is excusable. *Compare* ECF 117 ¶¶ 46-53 (citing and applying *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 385 (1993)) *with* ECF 142 ¶¶ 73-78 (citing and applying *In re Am. Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005)).

13

50. Regarding prejudice, Plaintiffs argue that, had Mr. Martinez raised the issues presented here sooner, Mr. Trexler would have sought and obtained *pro hac vice* admission sooner. ECF 142 ¶ 76. To suggest that Plaintiffs are prejudiced because, if Mr. Martinez had made this argument sooner, their counsel could have taken the steps necessary under the rules of this Court to ensure his fees were recoverable is insufficient. Mr. Martinez is not responsible for ensuring counsel complies with the applicable rules and Plaintiffs can recover fees incurred on their behalf.

51. Second, in a footnote, Plaintiffs argue that they have "relied upon the Court's decision that fees paid to unadmitted personal counsel are recoverable in their subsequent use of their personal counsel for other matters for which fees will be recoverable." ECF 142, ¶ 73 n.12. Prejudice however is "not merely the loss of an advantageous position." *Manus Corp. v. NRG Energy, Inc.* (*In re O'Brien Env't Energy, Inc.*), 188 F.3d 116, 127 (3d Cir. 1999). This too is insufficient.[5] Plaintiffs thus point to no prejudice that weighs in favor of denying relief here.

52. Plaintiffs make no tenable argument regarding the rest of the *Pioneer* factors.

53. Accordingly, Mr. Martinez requests that the Court grant relief pursuant to the requirements of Rule 60(b)(1).

**Rule 60(b)(2)**

54. Plaintiffs insist that the information Mr. Martinez bases his request for relief under

---

[5] Mr. Martinez cited to *Feliciano v. Reliant Tooling Co., Ltd.* in a supporting parenthetical, referencing a case where the Third Circuit, contrary to Plaintiffs' explanation, found the party opposing relief under Rule 60(b)(1) did not successfully establish prejudice *because it did not assert* "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment to support a finding of prejudice." 691 F.2d 653, 657 (3d Cir. 1982). Mr. Martinez does not argue that because Plaintiffs have not asserted those same prejudicial results here, they will not suffer prejudice. Mr. Martinez argues more broadly that relief from the Fee Order "would not impact the balance of Plaintiffs' discovery or case." ECF 117 ¶ 50. Nonetheless, Plaintiffs have not asserted that they will suffer prejudice beyond "the loss of an advantageous position," which is insufficient to deny relief. *Manus Corp.*, 188 F.3d at 127.

14

Rule 60(b)(2) was available to him, "in painstaking detail," in August 2025. ECF 142 ¶ 81.

55. While Mr. Trexler's accounting of his incurred fees was available to Mr. Martinez at the time he filed his Objections to Plaintiffs' First Fee Request, what was missing was any recognition that Mr. Trexler acted as lead counsel and any explanation to the Court of Mr. Trexler's interim suspension or failure to apply for *pro hac vice* admission.

56. Mr. Martinez otherwise incorporates his argument for relief under Rule 60(b)(2) as made in his Motion.

**Rule 60(b)(3)**

57. Plaintiffs argue that Mr. Martinez cannot establish misconduct justifying relief under Rule 60(b)(3). ECF 142 at 30.

58. To the extent it bears on the issues here, contrary to Plaintiffs' argument, Mr. Martinez did not and does not contend that Plaintiffs or Mr. Trexler engaged in fraud.

59. Nevertheless, Plaintiffs incorrectly assert that Mr. Martinez accused Mr. Trexler of committing fraud, ECF 142 ¶ 91, and are intentionally obtuse regarding the misconduct Mr. Martinez highlights. Mr. Martinez used the phrase "consulting counsel" as a term of art contemplated by *Gsell*—not as a misquote of Mr. Trexler—and indeed provided the precise language in Mr. Trexler's declaration that made clear that he incorrectly characterized his role as one of a consulting or assisting, rather than a lead, attorney. *See* Motion, ECF 117, ¶ 68; ECF 48, Trexler Decl. ¶¶ 1 ("I am assisting Plaintiffs as co-counsel[.]"), 4 ("My assistance to Plaintiffs in the instant case has been supervised by Attorney John A. Gagliardi.").

60. Moreover, as explained above, Mr. Trexler's Declaration in Support of Plaintiffs' First Fee Request *had to* characterize him as a consulting or assisting attorney, because that is the

15

only way his fees are recoverable. The error in that characterization is precisely the error and misconduct that requires relief under Rule 60(b)(3).

**Rule 60(b)(6)**

61. Finally, Plaintiffs make the general argument that Mr. Martinez is "not a compelling candidate for relief under Rule 60(b)(6)." ECF 142 ¶ 96. But Plaintiffs' argument is only that Mr. Martinez is objecting to their fees to justify his violation of previous court orders, and they do not argue with specificity why Mr. Martinez is not entitled to such relief.

62. This is plainly not true. Mr. Martinez's only purpose in bringing this Motion is to protect himself from paying fees that Plaintiffs are not legally entitled to recover. In the absence of any substantive response from Plaintiffs, this Court should grant the relief Mr. Martinez requests under Rule 60(b)(6).

**CONCLUSION**

63. For the foregoing reasons and the reasons stated in his original Motion and Objection, Mr. Martinez respectfully requests the Court: (a) grant his motion for relief pursuant to Rule 60(b) and vacate the Fee Order to the extent it orders Mr. Martinez to pay fees and costs incurred by Trexler & Zhang LLP; and (b) sustain his Objections to Plaintiffs' Second Fee Request.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated: December 19, 2025

By: _/s/ Matthew A. Hamermesh_
Matthew A. Hamermesh
One Logan Square, 27th Floor
Philadelphia, PA 19103
T: (215) 568-6200
F: (215) 568-0300
E: mhamermesh@hangley.com

*Counsel for Mario Martinez Aguila*

16

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re<br><br>**LILJANA SINOJMERI.**<br><br>Debtor. | Case No. 24-10899-AMC<br>Chapter 7 |
| **CHIA-HUI CHANG and PAI-CHI TSAI,**<br>Plaintiffs,<br>v<br>**LILJANA SINOJMERI,**<br>Defendant. | Adv. No. 24-00088-AMC |

**CERTIFICATE OF SERVICE**

I, Matthew A. Hamermesh, Esquire, hereby certify that a true and correct copy of the forgoing was served on all parties on this date via the Court's ECF filing system.

                                      HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated: December 19, 2025        By:   */s/ Matthew A. Hamermesh*
                                                    Matthew A. Hamermesh
                                        One Logan Square, 27th Floor
                                        Philadelphia, PA 19103
                                        T: (215) 568-6200
                                        F: (215) 568-0300
                                        E: mhamermesh@hangley.com

                                        *Counsel for Mario Martinez Aguila*